JOHNIE B. WILSON *v*. STATE OF INDIANA.

[No. 274S41. Filed September 16, 1975. Rehearing denied November 19, 1975.]

474

*Sam Mirkin,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

ARTERBURN, J.—A jury convicted Appellant of Murder while in the Commission of a Felony. Ind. Code § 35-13-4-1, Burns § 10-3401 (1974 Supp.). He appeals from the overruling of his Motions to Correct Errors.

The first issue which Appellant raises is the sufficiency of the evidence upon which he was convicted. John Buck testified that on December 22, 1972, he and Appellant robbed Becky's Bar and that in the course of the robbery one of the patrons got up from his bar stool and started to walk toward the Appellant. The Appellant shot this man with the sawed-off shotgun which Appellant was brandishing. Appellant suggests that the credibility of witness Buck is slight because in return for his testimony witness Buck was charged only with Committing a Felony While Armed. The credibility of witnesses is for the trier of fact. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686, and cases cited therein. Regardless of why the witness testified, there is nothing in the record which casts doubt upon the truthfulness or accuracy of his testimony. This testimony alone was sufficient to support a conviction. Appellant suggests that there was a failure of identification because no witness pointed to the Appellant and identified him as the robber and murderer. However, witness Buck said that Johnie Wilson was the defendant in the courtroom and the man who killed the tavern patron. Appellant does not deny he was the defendant in the courtroom while Buck was testifying. The identification was sufficient.

Appellant filed a plea of not guilty by reason of insanity. He was examined by two physicians who testified at trial.

Ind. Code § 35-5-2-2, Burns § 9-1702 (1974 Supp.). There was competent lay testimony on how Appellant acted prior to, during, and after the crime. *Blake* v. *State*, (1975) 262 Ind. 659, 323 N.E.2d 227. From all this evidence the jury concluded that Appellant was legally sane at the time of the commission of the crime. The jury's judgment on the factual issue of legal insanity is no different than its judgment on another factual issue. On appeal, we do not judge the credibility of witnesses nor weigh the evidence. We consider only that evidence favorable to the State and reasonable inferences to be drawn therefrom. *Blake* v. *State, supra.*

This evidence is that one of the examining physicians, Dr. Stanton, testified that the Appellant, when not influenced by heroin, could tell right from wrong. Appellant, a heroin addict, seizes upon this qualification and claims that his ability to tell right from wrong was diminished by his use of heroin. However, witness Buck testified that Appellant had last taken heroin about five (5) hours prior to the crime and that Appellant was acting "normal"; that is to say, neither "high" from the "fix" nor "sick" with the need for a new "fix." Buck said that at the time of the crime *he,* also an addict, knew right from wrong. The jury was entitled to credit the testimony of an experienced addict that the mere ingestion of heroin does not create an insane person. The jury was not required to believe in the spectre of "dope fiends"—people who rob and shoot other people because the drug "makes" them do it.

Appellant presents the testimony of Dr. Stanton in regard to Appellant: "There is a strong possibility, not confirmable due to lack of adequate information, that he may have been mentally ill at the time of the crime, most likely for reasons of alcoholism combined with heroin effects." Another physician, Dr. Metcalfe, testified that Appellant would be unable to tell right from wrong and unable to "form" his conduct to

a standard of right or wrong. Both physicians testified that Appellant was of an extremely low intelligence.

Without a doubt this evidence is susceptible to varying interpretations. Nevertheless, the jury performed its solemn duty and decided that Appellant was legally responsible for his conduct. Our law is that:

"a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to *appreciate* the wrongfulness of his conduct or to conform his conduct to the requirements of law."

*Hill* v. *State*, (1969) 252 Ind. 601, 614, 251 N.E.2d 429, 436. A jury may properly credit the testimony of lay witnesses over that of expert witnesses. *Blake, supra; Hill, supra.* We can not say that the finding of the jury on the question of Appellant's sanity was not based on substantial evidence of probative value.

Appellant's second contention is that Exhibit 13, a barrel of a 20-gauge shotgun, and Exhibit 14, a box of 18 shotgun shells, were improperly admitted into evidence over his objections. These items were seized pursuant to a search warrant which authorized a search of Appellant's residence. Appellant in his brief argues that the search warrant procedure was defective on four grounds: (1) the affidavit failed to state when the hearsay information was received by the affiant; (2) the affidavit failed to state facts from which the affiant had reason to believe that the 20-gauge sawed-off shotgun and pieces of barrel were at the home of Appellant; (3) the warrant was not issued by a neutral and detached magistrate; (4) the warrant was not properly returned. The affidavit in question is as follows:

"Edwin M. Bigda, being duly sworn upon his oath for purpose of obtaining a search warrant in the above cause states:

1. That he is an officer of the Michigan City Police Department, Michigan City, Indiana.

2. That he has reason to believe, through information obtained from one Joel Clay, who has given information in this cause prior to this time which has been reliable and corroborated by investigation as to the involvement of one Johnny B. Wilson in the robbery and shooting death of one Russell Peus on the 24th day of December, 1972. Specifically, Joel Clay lives next door to the home of Johnny B. Wilson on Union Street in the city of Michigan City and that he sold to Johnny B. Wilson on the 22 day of December a box of 20 gauge shotgun shells and saw in the possession of Johnny B. Wilson a 20 gauge shotgun. He also saw at the home of Johnny B. Wilson, the 20 gauge shotgun sawed off by Wilson. He later on the same day went to test fire the 20 gauge sawed off shotgun in Springfield Twp., LaPorte County with Johnny B. Wilson. On December 23, 1972 at approximately 10:30 AM Clay was in the accompany (sic) of Wilson, one John Buck and one Eddie Evans on a trip to Gary, Indiana at which time Wilson admitted that he was involved in the robbery of Russell Peus and that he shot Russell Peus with the 20 gauge sawed off shotgun.

3. That he has reason to believe that Joel Clay has spoken with personal knowledge of the matters contained herein in that he had previously stated that a badge taken from Russell Peus in the course of the robbery would be found in a trash can in Gary, Indiana and that upon investigation on December 29, 1972, Cpl. Stephen Bacztub, Cpl. Robert Bell and James Webb of the Michigan City Police Department found a badge containing the name of R. Peus, Michigan City Fire Department, in the location described by Joel Clay.

4. That your affiant on the basis of the above information has reason to believe that the 20 gauge sawed off shotgun described above and that pieces of the barrell (sic) of said weapon and/or metal shavings from the sawing of the barrell (sic) of said weapon are located at the home of Johnny B. Wilson at 212 Union St., Michigan City, Indiana and that this location may be physically described as a one story frame home, green in color.

5. That this affidavit is now made for the purpose of obtaining a Search Warrant from this Court to examine said home in it's entirety to search for the aforementioned articles."

This affidavit is dated December 29, 1972. The search warrant was issued and executed the same day. There is no

requirement that the affidavit must state when hearsay information was received by the affiant. Ind. Code § 35-1-6-2, Burns § 9-602 (1974 Supp.). Appellant is apparently arguing that since the informant gave information that the shotgun was in the residence on December 22, 1972, there was not probable cause to believe that the shotgun would be in the same place seven days later. Appellant suggests that the situation here is analogous to the one in *Ashley* v. *State*, (1968) 251 Ind. 359, 368, 241 N.E.2d 264, 269:

> "Although there can be no precise rule as to how much time may intervene between the obtaining of the facts and the issuance of the search warrant, in dealing with a substance like marijuana, which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later. Therefore, since the affidavit only made a showing of probable cause existing on October 3, 1964, and not on October 11, 1964, when the search warrant was issued the search warrant was defective and it was error to deny appellants' motion to quash the affidavit for the search warrant and to suppress the evidence thereunder seized."

Appellant compares a sawed-off shotgun to marijuana in terms of ease of concealment and mobility, the categories stressed in *Ashley*. We think the difference between the two situations are more significant. Not only is marijuana more easily concealed and more easily moved about than a sawed-off shotgun, it is common knowledge that marijuana, the mere possession of which is illegal, is frequently and continuously bought, sold, bartered and consumed. Thus, it is highly likely that a given amount of marijuana will not be in the place today where it was a week ago. The same can not be said about a sawed-off shotgun. We think there was probable cause to search for the gun at Appellant's residence based on the reliable hearsay testimony that the gun had been at that residence seven days prior to the search.

This affidavit contained the three kinds of information which the statute requires: (a) affirmative allegations that a credible person spoke with personal knowledge of the matters therein—rhetorical paragraph #3; (b) the facts within the personal knowledge of the credible person—rhetorical paragraph #2; (c) the facts within the affiant's knowledge as to the credibility of the credible person—rhetorical paragraph #3. *Madden* v. *State,* (1975) 263 Ind. 223, 328 N.E.2d 727.

Appellant's claim that the search warrant was not issued by a neutral and detached magistrate rests upon the fact that the city judge who issued the warrant was a law partner of the deputy prosecutor who administered the oath to the affiant-policeman. We can not agree with Appellant's suggestion that these facts "are almost similar" to those of *Coolidge* v. *New Hampshire,* (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. There, the Supreme Court held the magistrate was not neutral and detached because he was the same person who was actively in charge of the investigation and later became the chief Prosecutor at trial. We hold that a law partner of a deputy prosecutor is not *ipso facto* disqualified from issuing a search warrant in a case in which the deputy may be or may become involved in any degree.

Appellant's final attack on the search warrant consists of the claim that the affidavit was not "filed." The statute requires that: "No warrant for search . . . shall be issued until there is filed with the . . . judge of any city court . . . an affidavit, . . . ." Ind. Code § 35-1-6-2, Burns § 9-602 (1974 Supp.). Appellant rests his argument on the testimony of his trial attorney that on August 3, 1973, said attorney looked for and did not find the affidavit in the records of the Michigan City City Court. However, State's Exhibit One contained a certificate of the clerk of that court to the effect that the affidavit *was* a part of the records. Furthermore, the statute requires that an affidavit be filed

"with the judge" and the warrant itself recites that an affidavit was filed with the issuing judge. "Filing consists of the delivery of the paper to the proper officer for the purpose of being kept on file by him in the proper place." *Thompson* v. *State,* (1921) 190 Ind. 363, 130 N.E. 412. The paper (affidavit) was delivered to the proper officer (city judge).

Appellant believes the shotgun shells were inadmissible because they were not specifically included in the search warrant as items to be searched for as required by the statute. Ind. Code § 35-1-6-1, Burns § 9-601 (1974 Supp.). The warrant permitted the police to look for a "20 gauge sawed-off shotgun . . . and pieces of the barrell (sic) of said weapon and/or metal shavings from the sawing of the barrell (sic) of said weapon." State's Exhibit No. One reveals that the barrel was found at 8:07 p.m.; the shells at 8:15 p.m. The shells were found in the top drawer of a bedroom dresser. Neither the other pieces of the gun nor the metal shavings were found. Thus, it seems that after finding the barrel the police were, pursuant to the warrant, still lawfully in search of other parts of the gun and the shavings. A drawer is not an unreasonable place to look for such items. Therefore, the shells were within the "plain view" of the police officer who found them. That is to say, the police officer was making a justified intrusion into the drawer when he inadvertently discovered the evidence. Evidence seized in such a fashion is admissible. *Ludlow* v. *State,* (1974) 262 Ind. 266, 314 N.E.2d 750; *Coolidge* v. *New Hampshire, supra.*

Appellant states that the trial judge erred in denying Appellant's objections to the introduction into evidence of State's Exhibits 9, 10, 11 and 12 which were photographs of the scene of the crime including the body of the victim. These photographs were illustrative of testimony presented at trial. We have repeatedly said that such photographs are admissible notwithstanding that they are

naturally gruesome, slightly repetitious, and may incidentally tend to inflame the jury. *Hubbard* v. *State*, (1974) 262 Ind. 176, 313 N.E.2d 346; *Leaver* v. *State*, (1968) 250 Ind. 523, 237 N.E.2d 368, *Kiefer* v. *State*, (1958) 239 Ind. 103, 153 N.E.2d 899.

Appellant objected to the admission into evidence of State's Exhibit Number 2, a container with shotgun shells, for the reason that the State had failed to show a proper chain of possession. Officer Bacztub testified that he witnessed the autopsy performed on the victim. The doctor who performed that autopsy removed pellets from the body and handed them to Officer Bacztub. The officer placed them in the container, Exhibit No. 2, marked the container and sealed it. He then took the container to the detective bureau. An F.B.I. agent testified he received the container in a sealed condition in Washington, D.C. He subjected the pellets to tests and sent the container and pellets back. The chain of possession rule is that a "foundation must be laid connecting the exhibit with the defendant and showing the continuous whereabouts of the exhibit from the time it came into the possession of the police until it was laboratory tested. The purpose of the rule is to avoid any claim of substitution, tampering or mistake." *Jones* v. *State*, (1973) 260 Ind. 463, 466, 296 N.E.2d 407, 409; *Graham* v. *State*, (1970) 253 Ind. 525, 255 N.E.2d 652. Chain of possession questions involve probabilities as opposed to absolute certainty. *Jones, supra.* Furthermore, non-fungible items do not require the high degree of scrutiny applied to fungible items such as drugs. *Jones, supra.* Although it is technically true that the State did not present testimony "showing the continuous whereabouts of the exhibit from the time it came into the possession of the police until it was laboratory tested," the evidence that it was received by the F.B.I. in the same sealed condition it left the autopsy room is sufficient to counter the possibility of substitution, tampering or mistake. The pur-

pose of the rule having been achieved it was not error to admit the exhibit into evidence.

The trial court refused to give the following instruction requested by Appellant:

> "In order to sustain its burden of proof the State must prove that the accused had the specific intent to commit murder. If you find from all of the evidence that the defendant was so intoxicated from alcohol or drugs as to be incapable of forming the required specific intent then he must be found not guilty."

Appellant was charged with Murder in the Commission of a Felony; to wit, Robbery. The State was required to prove the intent to commit the robbery, but not required to prove an intent to kill. This instruction was properly refused. *Pruett* v. *State*, (1968) 250 Ind. 359, 234 N.E.2d 501; *Anderson* v. *State*, (1966) 247 Ind. 215, 214 N.E.2d 172; *Sinks, Taylor* v. *State*, (1956) 235 Ind. 484, 133 N.E.2d 563.

Appellant objected to the giving of State's Instruction Number One for the reason that it was repetitious of the Court's Instruction Number Seven. The instructions in question are as follows:

### State's Instruction No. 1

> "You are instructed that: You are the judges of the credibility of the witnesses, and the weight to be given to their testimony. You should reconcile the evidence in this case upon the theory that each and every witness has spoken the truth, if it can be reasonably done. You should not disregard the testimony of any witness without due consideration and without due cause. If you find such conflict in the testimony of the witnesses that you cannot reconcile their testimony, then it is your province to choose whom you will believe and whom you will not believe; and in determining what evidence you will receive and what you will reject, *you may take into consideration the interest, if any, that any witness has in the result of this trial;* his or her manner or demeanor upon the witness stand; the probability of his or her testimony; his or her means of knowing the things of which he or she testified; *his or her relationship, if any, to the accused or the deceased, or other interested persons if any;* and such other considerations as

appear right and proper to you in arriving at the truthfulness of each and every witness." (emphasis added)

Court's Instruction No. 7

"You are instructed that this being a criminal case you are the exclusive judges of the evidence, the credibility of the witnesses and the weight to be given to their testimony, and you have a right also to determine the law in the case. The court does not intend to express any opinion concerning the weight of the evidence, but is the duty of the court to advise you as to the law, and it is your duty to consider the instructions of the court; yet in your decision upon the merits of the case you have a right to determine for yourselves the law as well as the facts by which your verdict shall be governed.

It is your duty to reconcile the statements of the witnesses so as to give credence to all of the testimony, if you can, on the theory that the defendant is innocent; but if you cannot do this on account of contradictions, then upon you rests the responsibility of determining whom you will or will not believe.

You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. *In determining the credit to be given any witness you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have,* and the reasonableness of his testimony considered in the light of all the evidence in the case.

From all of the evidence, you will determine the guilt or innocence of the defendant, and make your verdict accordingly." (emphasis added)

We do not deny that these instructions are repetitious to a certain degree. However, we do not see that Appellant was harmed by any of the repetition. There is no undue repetition of a point prejudicial to Appellant. *Millar v. State*, (1973) 260 Ind. 368, 295 N.E.2d 814; *Johnson v. State*, (1972) 258 Ind. 683, 284 N.E.2d 517; *Zimmerman v. State*, (1921) 190 Ind. 537, 130 N.E. 235. Furthermore, in view of Appellant's earlier claim that the eye-witness had a personal interest in testifying, the material which we have

emphasized in each instruction may be said to be beneficial repetition insofar as the Appellant is concerned.

Appellant objected to the giving of State's tendered instruction No. 4 which reads as follows:

> "You are instructed that evidence of a low I.Q. in and of itself is not sufficient to negate responsibility for criminal acts."

The Appellant does not set out his objections verbatim, but his contention in general is that the instruction is mandatory and also that it invaded the province of the jury in deciding the facts in the case. This instruction plainly is not mandatory as condemned by this court in the past. The mere fact that instructions refer to evidence does not in itself constitute error. This instruction is not an erroneous statement. Low mentality standing by itself does not constitute insanity as defined by the law. *Hill* v. *State*, (1969) 252 Ind. 601, 251 N.E.2d 429. However, we do not recommend the giving of such instructions as above since there may be some tendency to misconstrue same.

While we do not recommend such instructions, we do not feel that we should assume that this one confused the jury and that the jury from such confusion acted prejudicially against the defendant. Far too frequently the courts are inclined to overemphasize the meaning of language in instructions, presuming and assuming that it influenced the jury and the jury's action when, from a practical point of view, with all the instructions given a jury, some slight variation in meaning can not have the impact upon their action that the court is urged to assume.

In this case there is no error in the plain language and we can not, as we stated before, assume that the jury perverted the meaning and acted upon it thus prejudicing the defendant. We find no error in the respect urged by the Appellant.

Witness Buck testified that about four (4) hours prior to the robbery-murder at Becky's Bar, he and Appellant had robbed a woman outside a grocery store. In an opening argument the prosecutor referred to this incident. Appellant objected on the ground that the prosecutor was referring to matters inadmissible as evidence since the general rule is that evidence of prior crimes is not admissible to prove the commission of another crime. Appellant did not object to the testimony of Buck concerning the perpetration of the earlier robbery, but if he had we think it would have been admissible. "We have held on numerous occasions that when the appellant enters a plea of not guilty by reason of insanity, he opens wide the door to all evidence relating to his past behavior and his environment including prior commission of crimes." *Stamper* v. *State,* (1973) 260 Ind. 211, 216, 294 N.E.2d 609, 612, and cases cited therein. Since what the prosecutor stated was properly proved in the course of the trial, Appellant's objection was correctly overruled. *Marshall* v. *State,* (1949) 227 Ind. 1, 83 N.E.2d 763.

Appellant's final allegation of error is that his trial counsel afforded him inadequate representation. It should be noted that this is the same attorney who traveled to Michigan City City Court to examine the files there. A hearing was held on this issue and the following evidence produced: the attorney made an independent investigation of the scene of the crime; he spent many hours in consultation with Appellant, the prosecutors and a former attorney for the Appellant; he refused Appellant's direction to call Appellant's wife as a witness or to subpoena a cousin for the reason that neither person had anything to contribute to the defense. In short, the record reveals not merely that Appellant received adequate representation, but that his attorney, a public defender, performed a difficult role in an honorable, intelligent and spirited manner.

Judgment affirmed.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DEBRULER, J.—Appellant objected to the State's Instruction #4 on the grounds that it was mandatory and that it constituted an unlawful invasion of the province of the jury. In that objection and in his brief, appellant argues that this Instruction singles out a particular piece of relevant evidence and requires that it not be given particular weight. The Instruction states:

> "You are instructed that evidence of a low I.Q. in and of itself is not sufficient to negate responsibility for criminal acts."

The legal test of insanity, which is to be included in an instruction to the jury in applicable cases, adopted by this Court in *Hill* v. *State*, (1969) 252 Ind. 601, 614, 251 N.E.2d 429, is:

> "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

See also *Summerlin* v. *State*, (1971) 256 Ind. 652, 661, 271 N.E.2d 411. The jury is to apply this test in two steps. In the first, the jury is to determine whether the accused suffered from a mental disease or defect at the time of the conduct. In the event the jury decides that he was so afflicted, the jury then proceeds to determine if that mental disease or defect rendered him incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the requirements of the law. By law, both of these determinations are left exclusively to the jury. The jury is to make these determinations upon consideration of the above legal test and the evidence presented at trial. It is therefore fairly obvious that this Instruction impermissibly requires the jury either to conclude that "low I.Q. in and of itself" is not a

mental disease or defect, or to conclude that, if "low I.Q. in and of itself" is a mental defect, it does not result in a substantial lack of capacity either to appreciate the wrongfulness of one's conduct or to conform one's conduct to the requirements of the law. In either event the Instruction substitutes the court's decision for that of the jury and erroneously invades the province of the jury. *Turner* v. *State*, (1972) 258 Ind. 267, 280 N.E.2d 621; *Taylor* v. *State*, (1972) 257 Ind. 664, 278 N.E.2d 273; *Pritchard* v. *State*, (1967) 248 Ind. 566, 230 N.E.2d 416.

The legal effect of acquiescing in the giving of this Instruction is to condone a modification of the legal test of insanity adopted in the *Hill* case. If it be a fact that "low I.Q. in and of itself" can never, when considered alone, be a mental defect or, being a mental defect, cannot render a human being substantially incapacitated to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, then, indeed it should be elevated to the definitional level and become part of the legal test of insanity. However, since I have no idea what a "low I.Q. in and of itself" is, I cannot agree that it should be so elevated. I would continue to adhere to the present formulation of the legal test and assignment of jury responsibility.

I vote to grant appellant a new trial.

NOTE.—Reported at 333 N.E.2d 755.