**Johnie B. WILSON, Petitioner-Appellant,**

v.

**Jack DUCKWORTH and Indiana Attorney General, Respondents-Appellees.**

**No. 81–2902.**

United States Court of Appeals,
Seventh Circuit.

Submitted July 7, 1983.*

Decided Aug. 1, 1983.**

Richard Lee Owen, II, Leg. Asst. Found., Michigan City, Ind., for petitioner-appellant.

Bruce L. Kamplain, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before BAUER, WOOD, and ESCH-BACH, Circuit Judges.

PER CURIAM.

Plaintiff Wilson appeals the denial of his petition for writ of habeas corpus, 28 U.S.C.

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

\*\* This appeal was originally decided by unpublished order on August 1, 1983. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

§ 2254, in which he challenged the language of a jury instruction. We affirm.

## I.

Wilson was convicted in a 1973 jury trial of murder committed while perpetrating the felony of armed robbery. Wilson interposed as a defense a plea of not guilty by reason of insanity. Two physicians examined Wilson and determined that Wilson had a mental age of 10 years. The physicians split, however, on their assessment as to whether Wilson could tell the difference between right and wrong. Dr. Stanton was of the opinion that Wilson could "tell the difference between right and wrong, shaded . . . by his low intelligence level and subject . . . to modifying influences of harmful substances [heroin and alcohol] which he might be exposed to." Dr. Metcalfe was of the opinion that Wilson's "mental disease or defect [was] of such a nature as to prevent his conforming his conduct to necessary standards of society."

The jury was instructed, over Wilson's objections, that ". . . evidence of a low I.Q. in and of itself is not sufficient to negate responsibility for criminal acts." The objection was renewed in post-trial motions to correct errors and on appeal. Wilson objected that the instruction invaded the province of the jury by singling out a particular piece of evidence, his low I.Q., and by limiting the jury's consideration of the evidence.

Wilson's conviction was affirmed on appeal. *Wilson v. State,* 263 Ind. 469, 333 N.E.2d 755 (1975). While the Indiana Supreme Court did not find the above jury instruction an erroneous statement of the law, *see Hill v. State,* 252 Ind. 601, 251 N.E.2d 429 (1969), the court recommended avoidance of such instructions because of the tendency to misconstrue the instruction. In a dissenting opinion, Judge DeBruler argued that the instruction was a modification of the legal test of insanity adopted in *Hill v. State,* 252 Ind. 601, 251 N.E.2d 429. The legal test of insanity as prescribed by *Hill* is: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Hill,* 252 Ind. at 614, 251 N.E.2d 429. The jury must apply the test in two steps. First the jury determines whether the accused suffered from a mental disease or defect at the time of the conduct. If the jury decides that the accused was afflicted, then the jury determines if that mental disease or defect rendered the accused incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the requirements of the law. Judge DeBruler concluded that the Wilson instruction impermissibly requires the jury either to conclude that "low I.Q. in and of itself" is not a mental disease or defect, or to conclude that, if "low I.Q. in and of itself" is a mental defect, it does not result in a substantial lack of capacity either to appreciate the wrongfulness of one's conduct or to conform one's conduct to the requirements of the law." Judge DeBruler urged that Wilson be granted a new trial.

Wilson filed the instant petition for writ of habeas corpus challenging the language of the jury instruction. Wilson with the aid of a legal assistant filed a traverse. The petition for writ was denied, and this appeal followed.

## II.

In *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), the Court articulated the standard for waging a collateral attack on jury instructions. The Court stated that the petitioner must not merely show that the instruction was "undesirable, erroneous, or even universally condemned," but must show that the ailing instruction "by itself so infected the entire trial that the resulting conviction violated due process." *Id.* at 154, 97 S.Ct. at 1736, citing *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368. It is a well-settled proposition that a single jury instruction should not be judged in artificial isolation but be viewed in the context of the overall charge, because

the process of instruction is but "one of several components of the trial which may result in the judgment of conviction." *Henderson,* 431 U.S. at 153 n. 10, 97 S.Ct. at 1736 n. 10; *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400. With these principles, we consider Wilson's objections to the jury instruction.

Wilson contends that the instruction was erroneous and improper because it was ambiguous, limited the freedom of the jury to consider the evidence and unduly emphasized the evidence of Wilson's I.Q. Wilson speculates that the instruction could have been construed as meaning that the expert testimony pertaining to Wilson's low I.Q. was not to be given any weight, thus relieving the state of some of its burden of proving Wilson sane beyond a reasonable doubt.

In *Hill v. State,* 252 Ind. 601, 611, 251 N.E.2d 429 (1969), the Indiana Supreme Court adopted the A.L.I. definition of insanity[1] and applied the new standard to defendant's argument that he had a low I.Q. bordering on retardation. While acknowledging that mental weakness was not a defense to a criminal prosecution, *Robinson v. State,* 113 Ind. 510, 16 N.E. 184 (1887), the court acknowledged that intelligence was a factor to be considered when determining whether the defendant had the requisite capacity to conform his actions to the requirements of the law. But, even under the Durham test, which the *Hill* court rejected, a defendant must show a causal relationship between the low I.Q. and the crime. *Id.* 252 Ind. at 612, 251 N.E.2d 429.[2]

*See also United States v. Jackson,* 553 F.2d 109, 116 (D.C.Cir.1976), citing *McDonald v. United States,* 312 F.2d 847, 850 (D.C.Cir. 1962). Thus, Wilson must produce evidence other than low I.Q. to avail himself of the insanity defense. Significantly, the *Hill* court stressed the importance of complete consideration of a defendant's mental state, so as to ensure that testimony of psychiatrists not usurp the function of the jury, and that the jury not be bound by the definitions or conclusions of the experts as to what is a disease or defect. *Id.* 252 Ind. at 615, 251 N.E.2d 429. The *Hill* court described the role of psychiatric testimony as simply proving a description of the defendant's mental state as he sees it. The jury would make the determination as to criminal responsibility supplied with a clear understanding of the nature of the defendant's composite mental state and its relation to the criminal act. *Id.* at 616, 251 N.E.2d 429.

■ Wilson ignores the applicability of *Hill* and relies instead on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). However, *Sandstrom* is addressed to jury instruction language creating a presumption of the volitional element of the offense, and is not applicable to the case at bar. Here, the instruction does not use mandatory language and does not mandate a presumption of the cognitive or volitional elements of the offense. *See e.g., Feguer v. United States,* 302 F.2d 214 (8th Cir.1962). The instruction merely states, "... evidence of a low I.Q. in and of itself

---

**1.** The *Hill* court preferred the ALI test because it recognized cognitive and volitional capacity as elements of criminal responsibility. The ALI test defined insanity as: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. (2) As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

**2.** *Durham (Durham v. U.S.,* 214 F.2d 862 (D.C. Cir.1954)) distinguished mental disease from mental defect as follows: a disease is a condi-

tion capable of either improving or deteriorating; a defect is a condition which is not considered capable of either improving or deteriorating and which may be either congenital or the result of injury or the residual effect of a physical or mental disease.

The *Hill* court felt the *Durham* rule inadequate because "... an accused could know the nature and quality of his act, know that it was wrong, have the will power to restrain his act, and yet by reason of his mental disease, develop egocentric or sadistic tendencies which could produce homicide with criminal impunity." *Id.* 252 Ind. at 612, 251 N.E.2d 429 citing *Flowers v. State,* (1957) 236 Ind. 151, 139 N.E.2d 185.

is not sufficient to negate responsibility for criminal acts."

The *Wilson* court determined that the instruction (1) was not mandatory; (2) was not erroneous because it referred to evidence in the context of an instruction; and (3) was not an erroneous statement of law. Moreover, the court said that one cannot assume that despite the plain language of the instruction, the jury perverted the meaning and acted upon it to the prejudice of the defendant. We agree and conclude that Wilson has failed to show that the instruction so infected the entire trial that the resulting conviction violated due process. *Henderson v. Kibbe,* 431 U.S. at 154, 97 S.Ct. at 1736.

### III.

Wilson next challenges this Court's denial of motion for appointment of counsel. The crux of Wilson's argument is that once a district court grants a certificate of probable cause to a *pro se* litigant, the court of appeals must appoint counsel in order to address the merits.

Section 3006A(g), 18 U.S.C. § 3006A, provides in pertinent part:

"Discretionary appointments.—Any person ... seeking relief under section 2241, 2254, or 2255 of title 28 ... may be furnished representation pursuant to the plan whenever the United States magistrate or the Court determines that the interests of justice so require and such person is financially unable to obtain representation...."

Further, it has been the law of this circuit that appointment of counsel for indigents in habeas corpus proceedings rests in the discretion of district courts "unless denial would result in fundamental unfairness impinging on due process rights." *LaClair v. United States,* 374 F.2d 486, 489 (7th Cir. 1967).

Although our decisions address the standard for exercising discretion to appoint counsel at the district court level, those standards would be relevant in the appellate court. *See Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983); *McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982); *Maclin v.*

*Freake,* 650 F.2d 885 (7th Cir.1981). In those cases, we set forth five factors which a district court should consider in ruling on a request to appoint counsel. Those factors were (1) whether the merits of the claim are colorable; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) capability of the indigent to present the case; and (5) complexity of the legal issues raised by the complaint. *Merritt,* at 764.

Here, the only basis for Wilson's argument that his petition presents a colorable claim is the granting of a certificate of probable cause by the district court. Wilson has not pointed to issues of fact or law that appointed counsel could develop for presentation to this Court. In fact, Wilson fails to consider that on appeal he could not present issues that were not before the district court. Thus, the only issue that Wilson may present to this Court is the issue of the jury instruction, an issue adequately presented to the district court.

Finding no further issues properly before this Court, the judgment of the district court is affirmed.