



FILED

Jun 29 2020, 10:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-CR-435

## State of Indiana,
*Appellant (Plaintiff)*

—v—

## Wesley Ryder,
*Appellee (Defendant)*

---

Argued: January 23, 2020 | Decided: June 29, 2020

Appeal from the Marion Superior Court,
No. 49G09-1506-F6-19537
The Honorable Ronnie Huerta, Magistrate

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-CR-2325

---

**Opinion by Justice Massa**

Chief Justice Rush and Justices David and Goff concur.
Justice Slaughter concurs in Part I and in the judgment, without separate
opinion.

**Massa, Justice.**

Wesley Ryder, an off-duty police trainee, caused a head-on collision when he drove the wrong way on an Indianapolis freeway. Ryder—who has been charged with various felonies and misdemeanors for operating while intoxicated—now seeks the suppression of blood test results obtained the morning of the accident. He argues that both an Indiana statute and his constitutional rights were violated when the arresting state trooper failed to properly file a probable cause affidavit to obtain a blood-draw search warrant. The trial court agreed and suppressed the blood test results, finding that a copy of the probable cause affidavit was not properly filed until a few hours after it had been presented to the warrant-authorizing judge and quickly executed.

Today, we reverse the suppression of the blood test and remand for two reasons. First, we hold that the warrant-authorizing judge certified contemporaneously, and in writing, that the probable cause affidavit had been properly filed with her when the search warrant was issued. Second, we hold that even if the affidavit was filed a few hours after it was presented to the authorizing judge—as the trial court found—it was still valid under Indiana's substantial compliance filing doctrine and suppression of evidence obtained from the search warrant is not justified.

## Facts and Procedural History

Wesley Ryder, an off-duty Indianapolis Metropolitan Police Department trainee, drove the wrong way on I-465, causing a head-on collision around 4:30 a.m. on June 4, 2015. Indiana State Trooper Robert Augst, who was dispatched to the accident scene, immediately smelled alcohol on Ryder and observed "bloodshot glassy eyes" and "slurred speech." Tr., p.9. Although the "confused" Ryder could not remember "how he came to be going southbound in a northbound lane," he agreed to take a standard field sobriety test, which he failed. *Id.* After he refused an offered breathalyzer test, Ryder was arrested and transported to the Marion County Arrestee Processing Center so Trooper Augst could obtain a search warrant for a blood draw.

Although a judge was usually on call overnight at the processing center, inexplicably none were available that morning. As time was of the essence, Trooper Augst called Marion County Superior Court Judge Barbara Crawford, who agreed to meet him at a Speedway gas station along the freeway to consider his search warrant request. Before leaving the processing center, Trooper Augst worked with a prosecutor to prepare his probable cause affidavit and proposed warrant. An employee of the Marion County Clerk's office made an entry in the recording system creating a cause number around 7:15 a.m., and the cause number was included in the affidavit presented to Judge Crawford. The parties dispute whether Trooper Augst left a copy of the probable cause affidavit and warrant with the Clerk before heading out to meet Judge Crawford.

After arriving at the gas station parking lot, Judge Crawford reviewed the affidavit and approved the search warrant at 7:44 a.m. On a separate page, Judge Crawford certified that "A copy of the probable cause affidavit and search warrant **has been filed with the signing judge** on this date of June 4th[,] 2015," with the date at the end of the statement handwritten. Appellee's Ex., p.8 (emphasis added) (capitalization omitted). With a signed copy of the warrant in hand, Trooper Augst transported Ryder to Eskenazi Hospital where a blood draw was taken. The hospital retained a copy of the probable cause affidavit and warrant for its own records. On the hospital's copy of the affidavit, a handwritten note was added indicating that the blood draw was taken at "8:12" a.m. *Id.*, p.6. The results of this blood draw—taken nearly four hours after the accident—revealed that Ryder had a blood alcohol concentration of 0.11%.

After the blood draw, Trooper Augst returned to the county processing center and deposited the warrant and probable cause affidavit in a drop-box for the court clerk. According to the clerk's electronic docket entry, the warrant and affidavit were physically file-stamped and entered

into the record at 11:17 a.m.[1] Although the clerk's office still used paper records at the time, and a copy of the filed affidavit should have been kept by the clerk, the official stamped copy of these documents were lost by the clerk's office after it moved locations and transitioned to electronic filing. While the State later obtained the copy of the documents kept by the Hospital, this copy does not bear the clerk's file-marks from June 4, 2015. The State charged Ryder with three felonies and two misdemeanors stemming from the collision and his alleged intoxication.[2]

Three years later, Ryder moved to suppress the blood sample, alleging that its collection violated his rights against unreasonable search and seizure under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Ryder also argued that suppression was appropriate as a violation of Indiana Code section 35-33-5-2, which explicitly bars issuing a search warrant until an affidavit is "filed with the judge." At the suppression hearing, Augst could not recall whether he had left a copy of the documents with Judge Crawford, and Judge Crawford was apparently never contacted about her recollection of events or to see if she had retained a copy of the affidavit.

After the two-day hearing, the trial court granted the motion to suppress, excluding the blood test results. Because the electronic docket entries indicated a copy of the search warrant and affidavit were not recorded by the clerk until 11:17 a.m., the trial court stated that it didn't believe a copy of the affidavit had been properly "filed" before Trooper Augst received and executed the warrant. Tr., p.90. To the trial court, "it

---

[1] Although the official file-stamped copy was later lost, for purposes of this appeal, Ryder does not dispute that by 11:17 a.m. on June 4, 2015 a copy of both these documents had been placed into the record. The ongoing factual dispute revolves around what time on June 4 these documents were, legally speaking, **filed**.

[2] The charges included three Level 6 felonies: criminal recklessness, *see* Ind. Code § 35-42-3-2(a), causing serious injury while operating a vehicle while intoxicated, *see* I.C. § 9-30-5-4(a)(3), and causing a serious bodily injury while operating a vehicle with an alcohol concentration equivalent of .08% or more, *see* I.C. § 9-30-5-4(a)(1). Ryder was also charged with a Class A misdemeanor for operating a vehicle while intoxicated endangering another person, *see* I.C. § 9-30-5-2(a), and a Class C misdemeanor also for OWI, *see* I.C. § 9-30-5-1(a).

wasn't filed, [Trooper Augst] left and he had the Judge sign it, went to Eskenazi [Hospital], got that done, came back, dropped it off in the box. **When it got dropped off in the box, that's when it was filed**." *Id.*, pp. 90–91 (emphasis added). The trial court also rejected the applicability of the good faith exception. The State appealed, and the Court of Appeals affirmed in a memorandum opinion. *State v. Ryder*, No. 18A-CR-2325, 2019 WL 3720720 (Ind. Ct. App. Aug. 8, 2019).

After hearing oral argument, we now grant transfer, vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

## Standard of Review

When we review a trial court's ruling granting a motion to suppress "we determine whether the record discloses 'substantial evidence of probative value that supports the trial court's decision.'" *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011) (quoting *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006)). "We do not reweigh the evidence, but consider conflicting evidence most favorably to the trial court's ruling." *Id.* (quotations omitted). When the State is appealing a negative judgment, it "'must show that the trial court's ruling on the suppression motion was contrary to law.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008)). We, of course, review such questions of law de novo. *Blair v. EMC Mortgage, LLC*, 139 N.E.3d 705, 708 (Ind. 2020) (citations omitted).

## Discussion and Decision

In addition to conforming with the prohibition on unreasonable searches and seizures under the Fourth Amendment and Article 1, Section

11 of the Indiana constitution,[3] a valid warrant must comply with the additional statutory requirements implemented by our General Assembly. *Gray v. State*, 758 N.E.2d 519, 521 (Ind. 2001). The General Assembly has created a statutory framework to govern the issuance and execution of warrants that not only codifies the constitutional requirements, *see* Ind. Code § 35-33-5-1(a) (mirroring the constitutional requirement that a probable cause affidavit be supported by "oath or affirmation"), but also imposes additional requirements, *see, e.g.*, Ind. Code § 35-33-5-8

---

[3] An underlying dispute is whether Indiana's long-established statutory recording and filing requirements for probable cause affidavits are required by either the Fourth Amendment or Article 1, Section 11. Code section 35-33-5-2's filing requirements go well beyond mere codification of constitutional principles: both texts require only that no warrant "shall issue but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV (capitalization omitted); Ind. Const. art. 1, § 11. But while interpreting the Fourth Amendment, the U.S. Supreme Court, for example, has never prohibited the use of unrecorded, sworn testimony to supplement an affidavit and has even implicitly endorsed the practice. *See Aguilar v. Texas*, 378 U.S. 108 (1964) (intimating that sworn oral testimony may supplement an affidavit ); *see also United States v. Skarda*, 845 F.3d 370, 375 (8th Cir. 2016) ("There is no requirement that oral testimony in support of the warrant be recorded."). So the Fourth Amendment is also not implicated by the "unrecorded" written testimony at issue here. Given the strong statutory requirements imposed by our General Assembly in chapter 35-33-5 and its predecessors, this Court also has never separately considered whether the failure to record the contents of a probable cause affidavit—whether in written or verbal form—fails to satisfy Article 1, Section 11. Instead, Indiana courts have long applied the judicially created **exclusionary rule** when mere statutory requirements are violated because a warrant that is "not authorized by law" for "any reason" is invalid and subject to suppression. *Callender v. State*, 193 Ind. 91, 96, 138 N.E. 817, 818 (1923); *see also Johnson v. State*, 952 N.E.2d 305, 308 (Ind. Ct. App. 2011) ("[if] the warrant is held **invalid for any reason**, then the property seized may not be used as evidence against a defendant") (emphasis added). Therefore, it is improper to read the holding in *Thompson v. State* as constitutionalizing a specific filing requirement when this Court suppressed the fruits of a search warrant in *Thompson* because it did not comply with a statute in force at the time. *See Thompson v. State*, 190 Ind. 363, 367–68, 130 N.E. 412, 413 (1921) (analyzing the statutory language creating a filing requirement to determine a warrant's validity). *Thompson's* mention of a "constitutional" holding is merely a reference to the exclusionary rule which, at the time, was not fully developed. *See id.* While Article 1, Section 11 of our constitution "must be liberally construed to protect Hoosiers from unreasonable police activity," *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 2002) (citation omitted), a short delay in providing a record of the sworn affidavit does not trigger separate constitutional scrutiny, even if it raises legitimate questions of statutory compliance. So even under Ryder's version of the facts—where the affidavit was not filed until four hours after the warrant's approval—the dictates of the Indiana Constitution itself are not compromised.

(specifying exact requirements for how a warrant can be approved without a written affidavit) and even provides a sample warrant form, *see* Ind. Code § 35-33-5-3.

When written affidavits are used, the General Assembly has long required that a copy of the affidavit be filed with the issuing court. *See, e.g.,* Ind. Code Ann. § 35-1-6-2 (1914) (requiring the filing of an affidavit). Here, we must determine whether Indiana Code subsection 35-33-5-2(a)'s requirement that a warrant shall not issue until an affidavit "is filed with the judge" was met—either actually or substantially—when Trooper Augst undisputedly presented Judge Crawford with a written affidavit in the early morning of June 4th. *See* Ind. Code § 35-33-5-2 ("Except as provided in section 8 of this chapter [allowing the use of other forms of recorded testimony], and subject to the requirements of section 11 of this chapter, if applicable, **no warrant for search or arrest shall be issued until there is filed with the judge an affidavit**. . .") (emphasis added).

## I.  The filing requirement was actually met.

Nearly a century ago, this Court considered what it meant to "file" an affidavit while obtaining a warrant and ultimately concluded that "[m]erely **exhibiting** an affidavit to the judge, or executing it before him, is not a 'filing' of the affidavit with the judge." *Thompson v. State*, 190 Ind. 363, 367, 130 N.E. 412, 413 (1921) (emphasis added). Rather, "[f]iling consists of the delivery of the paper to the proper officer for the purpose of being kept on file by him in the proper place." *Id.* Finding that the written affidavit supporting the search warrant was not filed with the court clerk until sixteen days after it was executed, this Court—in its Prohibition-era ruling—"quash[ed]" the search warrant which had led to the seizure of "intoxicating liquor." *Id.* at 413, 368. Five decades later, however, we explained that when a copy of an affidavit "was **delivered**" to the authorizing judge, it was "filed" with a "proper officer" under Indiana statute. *Wilson v. State*, 263 Ind. 469, 480, 333 N.E.2d 755, 761 (1975) (emphasis added). In upholding the warrant, this Court noted that "the warrant itself recites that an affidavit was filed with the issuing judge." *Id.*

The validity of this practice has been repeatedly reaffirmed by the Court of Appeals. In *Scott v. State,* the court found the filing requirement was satisfied even though the judge's staff failed to provide the clerk's office with a paper copy of the warrant application until six months after the judge approved it and received a copy. 883 N.E.2d 147, 153 (Ind. Ct. App. 2008). While acknowledging that the "proper place" for these filings is the court clerk's office, the Court of Appeals held that "hand-delivery to the actual person specified by the statute [the Judge] easily qualifies as filing" under the statute. *Id.* Likewise, leaving a copy of the affidavit with the authorizing judge's staff satisfied the filing requirement even though the officer did not file a copy with the clerk's office until fourteen days later. *Moseby v. State*, 872 N.E.2d 189, 191–92 (Ind. Ct. App. 2007).

Recent Court of Appeals precedent has also clarified that a certification signed by the issuing judge attesting that "'an Affidavit has been filed with me'" is sufficient to support an evidentiary conclusion—in the absence of contradictory evidence—that a warrant had been properly filed directly with the judge. *Jefferson v. State*, 891 N.E.2d 77, 83 (Ind. Ct. App. 2008). In *Jefferson,* the Court of Appeals noted that the defendant "has shown only that the probable cause affidavit was filed with the trial court clerk [fifteen days later] and there is no evidence that the affidavit was not filed with the judge" when signed. *Id.* The affidavit language in *Jefferson* mirrors the language contained in the warrant at issue today. *See* Appellant's Ex. 1, p.8 ("A copy of the probable cause affidavit and search warrant has been filed with the signing judge on this date of June 4th[,] 2015.") (capitalization omitted).

The Court of Appeals, however, affirmed the importance of an affidavit's wording when it contrasted the language of a contested affidavit with the language of the filing certification in *Jefferson. Johnson v. State*, 952 N.E.2d 305, 310 (Ind. Ct. App. 2011) (citation omitted). Specifically, the Court expressly distinguished the challenged language— only requiring that "'[t]he [c]ourt, upon examination of the [affidavit], finds that there is a [p]robable [c]ause'"—from the comparable provision in *Jefferson*—where a judge attested that "'an Affidavit has been filed with me.'" *Id*. at 310, 309. "In comparison to the language of the warrants in *Wilson* and *Jefferson*, this language does not indicate that [the] Detective . . .

filed the affidavit. Instead, the word 'examination' implies that he," like the officer in *Thompson*, merely "exhibited the affidavit." *Id.* at 310. While the affidavit in *Johnson* was found to be improperly filed, it was still admissible under the good faith exception to the exclusionary rule. *Id.* at 312.

Today we reaffirm that providing a copy of an affidavit to the warrant-issuing judge satisfies the plain language of Indiana Code subsection 35-33-5-2(a). While the ease of document submission under our electronic filing system should provide a means to eliminate many filing problems—like the one at issue here—we recognize that the time-sensitive nature of many warrant requests means that situations may still arise where warrant applications are presented to a judge before they are filed with the clerk's office. By allowing the filing requirement to be met by simply providing an extra copy of the affidavit to the issuing judge at the time the warrant is signed, the General Assembly has created a manageable requirement.

This reading also tracks Indiana Code section 35-33-5-8, which allows verbal, faxed, or even emailed forms of sworn testimony to serve as the basis for a warrant if the issuing judicial officer maintains a record. *See* Ind. Code § 35-33-5-8(a). We believe the General Assembly did not intend to disadvantage the in-person presentation of written affidavits over less secure methods of delivery. *See, e.g.*, Ind. Code § 35-33-5-8(f) ("If a warrant is issued under subsection (a)(3), the facsimile copy of the affidavit and warrant sent to the judge shall be retained as if they were the originals."). Although best practice counsels formally filing an affidavit with the court clerk before presenting it to a judicial officer for consideration,[4] providing a copy of the document for a judicial officer to retain alone satisfies the filing requirement.

---

[4] Reliance on the judge to effectuate filing increases the odds of filing problems when the judge, or someone on her staff, misplaces the physical documents, leading to questions about the filing's validity that can easily be avoided by eliminating the middleman and filing directly with the court clerk. *See, e.g.*, *Scott v. State*, 883 N.E.2d 147, 152 (Ind. Ct. App. 2008) (where court reporter misplaced an affidavit for six months).

Ryder maintains that there is "no evidence that Trooper Augst presented Judge Crawford with multiple copies of the affidavit and search warrant so that she could keep [one of] the originals," citing to Trooper Augst's testimony not recalling if he had left a copy of the affidavit with Judge Crawford. Appellee's Resp. Br. at 12. While he concedes that Judge Crawford also signed a statement indicating a copy of the warrant had been filed with her when she authorized it, Ryder contends this language is mere "boilerplate" that is routinely included on Marion County warrant requests. Tr., p.80. He contends that for the statement to have binding effect, there should have been a place for the judge to indicate—**yes** or **no**—whether a copy was indeed filed with her. Ryder also contends that since the date was handwritten in separately, there is no way to tell if the page was dated when Judge Crawford signed it. For its part, the State argues that Judge Crawford's contemporaneous signature constitutes uncontested evidence that a copy of the affidavit was filed with her. The State also contends that in suppressing the warrant, the trial judge never specifically found that a copy of the affidavit had been left with Judge Crawford.

The State's view is correct. The transcript shows that the trial court's verbal holding—that when the affidavit "got dropped off in the box, that's when it was filed and that is when it was entered in as returned"—did not directly address the State's argument that the filing requirement was alternatively satisfied by leaving a copy with Judge Crawford. Tr., pp. 90–91.

Despite Ryder's claim, the prevalence in warrant applications of the statement Judge Crawford signed—indicating a copy of the affidavit was filed with her—is of no concern. Indiana courts routinely hold parties to the terms of "boilerplate" contractual language because our legal system relies on the assumption that an individual would not agree to these terms if they did not reflect reality. *See, e.g., De Alexander v. Linkmeyer Dev. II, LLC,* 119 N.E.3d 603, 614 (Ind. Ct. App. 2019) (noting that boilerplate contractual language, despite contrary arguments, "still carries legal effect"). Similarly, we presume that Judge Crawford would attest to a statement only if it were true. *See Stephenson v. Ballard,* 82 Ind. 87, 92 (1882) ("In the absence of any evidence, the legal presumption is that the judge

. . . [signed a statement only after he] convinced himself . . . that it contained the truth.") (quotation omitted).

While our standard of review grants the trial judge broad latitude to weigh evidence on motions to suppress, *see Renzulli*, 958 N.E.2d at 1146, we have repeatedly determined that a judicial officer's certification should be given legal effect. Given that Judge Crawford signed an affidavit with words nearly identical to the language found to be dispositive in both *Wilson* and *Jefferson*, if such a certification is true it must be binding as a matter of law. *See Wilson* 263 Ind. at 480, 333 N.E.2d at 761; *Jefferson*, 891 N.E.2d at 83. Therefore, the only remaining question is whether there is substantial evidence, in support of the magistrate's (implicit) holding, to overcome the legal presumption that what the judge signed was indeed true. *See Renzulli*, 958 N.E.2d at 1146.

While contradictory evidence can overcome this presumption, *Stephenson*, 82 Ind. at 92, no such evidence exists here. Even after reviewing facts in a light most favorable to the trial court ruling, no evidence adequately contests the veracity of Judge Crawford's signed statement attesting that a copy of the affidavit had been left with her when she approved the warrant. Trooper Augst's testimony—that he could not recall, at a hearing three years later, whether he gave Judge Crawford an extra copy of the affidavit—provides neither support nor dispute, it simply means that three years later he could not remember if he did. And if Judge Crawford wanted to authorize a warrant before she was certain that an affidavit had been filed, she could have signed the warrant and affidavit but declined to sign, a third time and on a separate page, an affirmation that a copy "has been filed with the signing Judge." Appellant's Ex. 1, p.8 (capitalization omitted). Altogether, the uncontroverted evidence leads only to a conclusion that a copy of the affidavit was delivered to—and thus filed with—Judge Crawford herself.

## II. The filing requirement was substantially met.

Even if we agreed that the paper was not "filed" until Trooper Augst dropped his copy of the paperwork at the clerk's office after the blood

draw, we hold that this filing would still substantially comply with the statutory requirement.

Starting with *Cutter v. State*, the Indiana Court of Appeals has developed a "substantial compliance" doctrine for the statutory recording/filing requirements for warrant applications. 646 N.E.2d 704 (Ind. Ct. App. 1995). In *Cutter*, the requesting officer—not the authorizing judge as required by Indiana Code subsection 35-33-5-8(e)—recorded an oral telephonic warrant request. *Id.* at 711–12. The Court of Appeals found the recording, although made by the wrong person, substantially complied with the statute and refused to elevate "substance over form" because the purpose of the filing requirement—"to insure both that a reliable audiotape of the proceeding is made and that the issuing magistrate is responsible for insuring that such occurs"—had been fulfilled. *Id.* at 712.

A decade later, the Court of Appeals held that substantial compliance also applied when an officer failed to leave a copy of a written probable cause affidavit with the warrant-issuing judge and did not officially file the application with the clerk's office until the next day. *Bowles v. State*, 820 N.E.2d 739, 746 (Ind. Ct. App. 2005). While admonishing the State to avoid these late filings, the Court of Appeals held that "under the circumstances of this case," the officer "substantially complied with the statute when he filed the affidavit the next day." *Id.* at 746. In upholding the warrant's validity, the court noted that the defendant "does not contend that he was prejudiced by [the officer's] failure to file the affidavit precisely according to the statute," the Court reasoned that the statute's purpose had ultimately been fulfilled because the slightly tardy filing did not prevent the defendant from having timely access to accurate, particularized descriptions of facts used to support the warrant. *Id.*

But when a probable cause affidavit was filed with the clerk fifteen days after its presentation and execution, the Court of Appeals upheld suppression. *Rucker v. State*, 861 N.E.2d 1240, 1242 (Ind. Ct. App. 2007). Although the Court again faintly endorsed the substantial compliance doctrine, it held that such a long, "'unnecessary'" delay constituted a violation of the statutory filing requirement, even absent a showing of

prejudice. *Id.* (quoting *State v. Mason*, 829 N.E.2d 1010, 1021 (Ind. Ct. App. 2005) (where dicta suggested that an "unnecessary" and "inexcusable" delay of twenty-eight days in filing an affidavit would have constituted sufficient alternative grounds to justify suppression of a warrant)).

The primary objective of Indiana's statutory filing requirement is to ensure the defendant is provided prompt access to a complete and accurate record of sworn testimony considered by the judicial officer who issued the warrant. *See Cutter*, 646 N.E.2d at 712. This access ensures that both the State and the judicial officers can promptly be held accountable when warrants are issued based on questionable legal or factual bases. *See, e.g.*, *Heuring v. State*, 140 N.E.3d 270, 272 (Ind. 2020) (suppressing evidence because "affidavits did not establish probable cause that the GPS device was stolen"). By requiring contemporaneous filing, the statute also seeks to ensure accuracy by limiting opportunities for later tampering with the documents' contents.

Under the substantial compliance doctrine, the length of delay in filing is of paramount concern. *See Johnson v. State*, 952 N.E.2d 305, 309 (Ind. Ct. App. 2011) ("[I]t is significant whether the filing of an affidavit is timely."). When a warrant application is filed weeks after its execution (or is never filed) these apprehensions soar to their zenith. *See Rucker*, 861 N.E.2d at 1242 (suppressing evidence after warrant and affidavit were filed fifteen days after execution); *Mason*, 829 N.E.2d at 1021 (suggesting a twenty-eight-day late filing was grounds for suppression); *Johnson*, 952 N.E.2d at 309 (finding that suppression of evidence would be appropriate because the affidavit was never actually filed, however, the state was saved by the good faith exception). By contrast, these concerns plummet to their nadir when the warrant application is filed soon after its issuance. *See Bowles*, 820 N.E.2d at 746 (finding substantial compliance when, even absent an explanation for the delay, the affidavit was filed with the clerk the next day).

Given that the trial court found that the warrant was filed (at the most) four hours late, the facts of the present case are simply much closer to *Bowles* than they are to *Rucker* or *Johnson.* Ryder had access to the contents of the warrant application and was free to challenge the warrant based on

the affidavit's contents.[5] Ryder does not contend that he was prejudiced by the trooper's failure to file the affidavit precisely according to the statute. While the lack of prejudice is not by itself dispositive, *see Rucker*, 861 N.E.2d at 1242, it certainly strengthens the State's position. And since a copy kept in the Hospital's records was saved at the time of its execution—less than an hour after it was signed by Judge Crawford—the State was not provided with a significant theoretical opportunity to tamper with the affidavit. In short, we find substantial compliance, even if the affidavit was "filed" four hours late, because the main goals of the filing requirement were met.

Not every warrant application filed up to a day late is inevitably in substantial compliance with the filing requirement. As cautioned in *Bowles*, situations where other factors—including a repeated disregard of the filing deadlines by the State—may justify the suppression of warrants when warrant applications are filed mere hours late. 820 N.E.2d at 746 n.5 ("Although we have determined that [the Detective] substantially complied with the statute in this case, we can envision other circumstances that could arise which would lead to the opposite result."). The record here, however, shows no signs of systemic abuse of the filing process or other troubling factors. As Ryder notes, this was the first time Trooper Augst was forced to meet a judge at a gas station to seek the authorization of a search warrant. Therefore, the substantial compliance doctrine also requires that the results of this warrant should not be dismissed.

## Conclusion

We hold that the blood-draw search warrant application satisfied the filing requirement under Indiana Code subsection 35-33-5-2(a) because the signing judge's uncontroverted certification that an affidavit had been

---

[5] The prosecution cannot, and should not, be held responsible for any delay in the affidavit produced for Ryder because the clerk's office later lost the affidavit.

delivered to her at the time of the warrant's authorization established that the filing requirement had been satisfied. Alternatively, even if the warrant application was "filed" four hours late, the tardy submission still constitutes substantial compliance with the filing requirement. We reverse and remand for further proceedings consistent with this opinion.

Rush, C.J., and David and Goff, JJ., concur.
Slaughter, J., concurs in Part I and in the judgment, without separate opinion.

ATTORNEYS FOR APPELLANT
Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana

Stephen R. Creason
Chief Counsel, Appeals Division
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
John D. Fierek
Fierek Legal Group
Brownsburg, Indiana