Edgar E. TRICE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1085S424.

Supreme Court of Indiana.

Feb. 23, 1988.

John B. Wilson, Jr., Nashville, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Edgar Trice was convicted of conspiracy to commit murder and was sentenced to thirty (30) years in the Indiana State Prison. Trice raises four (4) issues in his direct appeal, as follows:

1. trial court error in limiting testimony elicited from State's witness regarding witness' prior acts of misconduct;

2. police misconduct in negligently or intentionally destroying or withholding tape recordings of possibly exculpatory phone conversations;

3. trial court error in permitting the State to present evidence of Trice's criminal history in closing argument;

4. insufficient evidence to sustain Trice's conviction for conspiracy to commit murder.

The facts most favorable to the State are as follows: Around November, 1984, Edgar Trice contacted Alonzo Jones regarding putting a "hit" on Damon Roach and Roach's attorney, Richard Hailey. Jones is an elderly man with a long criminal history; Roach is Trice's former brother-in-law with whom Trice is entangled in a civil suit over his deceased wife's estate. Roach was at that time pastor of a local Baptist church and a bail bondsman for a local insurance company. Jones and Roach have shared for years what may be described as a father-son relationship.

Trice persisted through November and December regarding a "hit man." While Jones at first did not take Trice seriously, he eventually contacted Roach to warn him of Trice's intention. Roach in turn contacted Detective John Larkins at the Indianapolis Police Department. Larkins, Roach, and Jones entered into an agreement wherein Jones would pretend to make arrangements for the hit and unbeknownst to Trice, the hit man actually would be Detective John Grable.

In early January 1985 Trice and Jones met a few times to solidify plans for the hit. Prior to one of the meetings, Jones made a phone call to Trice. During the call, Jones explained the hit man was in town and required a $500 downpayment and a gun to kill Roach. This call was recorded by police. Later that day Larkins and Grable, who were hiding in the garage, observed Trice enter Jones' home carrying a brown paper bag. Jones and Trice's conversation was monitored by a radio transmitter set up inside the residence. It became apparent Trice carried a 9 mm gun in the bag, as well as the $500 downpayment. Jones told Trice "Tony," the hit man, was waiting for the gun and money in a downtown Indianapolis hotel. The men agreed Tony would be paid an additional $500 after the hit was completed. At the hotel, Trice handed Grable the bag containing the money and gun, but did not speak directly to Grable. He pointed to Roach's name and

address in the phone book when Grable inquired as to the identity of the intended victim. This meeting too was monitored.

The next day, Grable telephoned Trice to tell him the hit had been made. To prove he'd completed the job, Grable had taken photographs of Roach posing in the trunk of a car as though he was dead. Trice said he would wait until he read about the death in the newspapers, and needed no photos.

A few days later, a female detective posing as "Tony's girlfriend" called Trice and told him to leave the remaining $500 in a car parked in a McDonald's restaurant parking lot. When Trice didn't show, Larkins and a few other officers went to Trice's place of business and arrested him.

I

■ Trice claims the trial court erred by refusing to permit him to cross-examine Jones with reference to allegations of Jones' dealing in drugs. These activities were never reduced to convictions. During cross-examination of Jones, defense counsel attempted to question Jones regarding marijuana which Trice believed Jones and a Mr. Lowell Johnson allegedly had hidden behind the furnace in the basement of the First Christian Missionary Baptist Church, where Roach was a minister. The State had anticipated this and filed a motion *in limine* to prevent the evidence from being admitted at trial. The court granted this motion. At trial, Trice attempted to pursue the cross-examination and the trial court refused to permit it. Trice claims such testimony was important because it showed Jones' bias in lying for Roach against Trice; this testimony would show Jones and Roach were partners in drug dealings. He reasoned that showing a crime partnership between Jones and Roach would show their bias against Trice because they plotted to put Trice in prison. Trice offered no evidence to prove Roach was in any way involved in Jones' and Johnson's alleged activities in hiding marijuana behind the church furnace. It seems to be the defense's theory that since Roach was the minister of the church, it could reasonably be implied Roach was involved with Jones

and Johnson in marijuana dealing. However, the trial court correctly found acts of misconduct not reduced to convictions are inadmissible against a witness for impeachment purposes. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083, 1091. An inquiry into bad acts or acts of misconduct may be permitted in certain instances at the trial court's discretion to show the witness' bias. A causal connection must be shown to exist between the evidence offered and the conclusion of bias. *Hossman v. State* (1984), Ind., 467 N.E.2d 416, *cert. den.* 469 U.S. 1195, 105 S.Ct. 977, 83 L.Ed.2d 980. In *Hossman* we stated:

"We believe the trial court was well within its discretion in finding that there was no, or at best remote, nexus connecting the excluded evidence and the conclusion of bias. Significantly, there is no indication in the record that murder charges were pending or even contemplated against either Crumpton or Dils ... Here, the trial court had discretion to weigh the possible prejudice which might ensue from opening up collateral matters in circumstances where there was arguably insufficient nexus to bias on Dils part ... The trial court exercised reasonable discretion in confining defendant's cross-examination so as not to divert the trial to an extraneous issue."

*Id.*, at 417–418; *see also Komyatti v. State* (1986), Ind., 490 N.E.2d 279.

The trial court was justified in finding here there was no nexus between the evidence sought by Trice's cross-examination of Jones and all the other testimony concerning Trice's efforts to find a hit man to murder Roach. The inference that Roach was somehow involved in drug dealing with Jones and Johnson, and that caused him to be biased against Trice, was nothing more than speculation unsupported by probative evidence. Therefore, the trial court properly found the testimony sought by cross-examination of Jones was extraneous, collateral and totally irrelevant.

II

Trice next contends that certain tape recordings of conversations were negligently

or intentionally lost or destroyed by the police department. He claims that some time during his relationship with Jones he found it necessary to tape record their conversations, and on the day he was arrested those tapes were confiscated by Detective Larkins. Trice asserts the tapes contained exculpatory statements made by him to Jones. The police claim they do not, nor ever did, have the tapes.

■ Certainly if the police had possession of the tapes and found them to be exculpatory, the prosecution would have the duty under *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, upon specific request to turn over that information to Trice. If it is found the prosecution did not comply with this duty by negligently or intentionally withholding or destroying material evidence for the defense the conviction may be reversed. *Birkla v. State* (1975), 263 Ind. 37, 323 N.E.2d 645, 649, *cert. den.* 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77; *Wilson v. State* (1982), Ind., 432 N.E.2d 30. However, while Detective Larkins admitted to having seen and handled the tapes, he claims they were never taken from the office. We are faced with conflicting evidence, and it is the duty of the jury to weigh this evidence and make a decision. We decline to invade the province of the jury on this issue, and we fail to find any reversible error.

### III

Trice next contends the trial court erred by permitting the State to bring out his misdemeanor convictions on rebuttal in closing argument. During Trice's closing argument, defense counsel stated:

> "Anybody who's been convicted of a crime, even a misdemeanor, is not a good advocate or a person as someone who is clean. The other folks in the room here, Mr. Larkins, Mr. Trice, Mr. Burns, they're clean."

In response to this on rebuttal, the State told the jury of Trice's three (3) misdemeanor convictions. The court and defense counsel had been informed of the State's intent to do so. In a discussion held outside the presence of the jury, the State indicated that defense counsel's statement during final argument that Trice was "clean" since he did not have misdemeanor or felony convictions, was untrue because Trice had a record of at least eight misdemeanor convictions dating back to 1956. The State argued for permission to tell this to the jury in rebuttal. The trial court stated: "The court would be of the opinion, if a statement that was not true was told to the jury, that the State would certainly have the right to indicate that that was not true in their rebuttal." During the lengthy discussion the court and counsel for both parties agreed that the State would tell the jury about three of the felony convictions, give the date they took place and make no further comment about them regarding details of the commission of the misdemeanors or penalties or time Trice served for those convictions. Trice agreed to this and it was done in that manner.

■ It is well-settled that for the purposes of impeaching the credibility of a witness, only those convictions for crimes involving dishonesty or false statement shall be admissible. These crimes render a witness incompetent: treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, and willful and corrupt perjury. *Ashton v. Anderson* (1971), 258 Ind. 51, 279 N.E.2d 210.

■■ It is improper for counsel in argument to comment on matters not in evidence, and it is the duty of the trial court to see that they refrain from doing so. *Adler v. State* (1961), 242 Ind. 9, 12, 175 N.E.2d 358, 359. However, it is also true that a party is entitled to respond to statements of fact made during defense counsel's closing argument even when such arguments by the State may under different circumstances be objectionable. *Goodman v. State* (1985), Ind., 479 N.E.2d 513, 516; *Marshall v. State* (1983), Ind., 438 N.E.2d 986, 989. Defense counsel opened the door to the State's rebuttal when the above-mentioned comments were made. The trial court committed no error in allowing the State to respond as it did.

 

## IV

Lastly, Trice contends the evidence presented at trial was insufficient to convict him of conspiracy to commit murder. Where sufficiency of the evidence is challenged on appeal, this court will not reweigh evidence or judge the credibility of witnesses. We look only to that evidence most favorable to the State and all reasonable inferences drawn therefrom. Where there is substantial evidence of probative value to support the conviction, the conviction will stand. *Tyra v. State* (1987), Ind., 506 N.E.2d 1100, 1102.

In this case the evidence shows Trice knowingly and intentionally agreed with Jones to murder Roach. He performed certain acts in furtherance of that agreement: he contacted Jones to aid him in finding a hit man, he spoke and met with Jones on numerous occasions in order to plan the hit, he brought a gun and $500 to Jones, and later the two men brought those items to Officer Grable. When asked who the intended victim was, Trice pointed to Roach's name and address in the phone book. In *Wilhelm v. State* (1983), Ind., 455 N.E.2d 595, an informant who made a deal with the State which protected him from prosecution, testified against the defendant regarding a conspiracy, two officers saw the defendant deliver a shotgun, and the State produced photos of the defendant with something that looked like a rifle. There this court held the evidence sufficient to convict the defendant of conspiracy to commit murder. The evidence is even more clear in the present situation, and is sufficient to convict Trice beyond a reasonable doubt of conspiracy to commit murder.

The trial court is in all things affirmed.

DeBRULER, GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., concurs except as to Issue II, on which he concurs in result.