Conway JEFFERSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0711–CR–613.

Court of Appeals of Indiana.

July 29, 2008.

Transfer Denied Sept. 23, 2008.

Lisa M. Johnson, Brownsburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Conway Jefferson appeals his conviction for dealing cocaine as a class A felony.[1] Jefferson raises three issues, which we revise and restate as:

I. Whether the trial court abused its discretion by admitting the evidence obtained during the search; and

II. Whether the trial court failed to permit Jefferson to present a defense.

We affirm.

The relevant facts follow. Indianapolis Police Officer Jeffrey McPherson received information from a confidential informant and a DEA document from one of the detectives in his office advising that Jefferson was selling cocaine in Indianapolis.

---

1. Ind.Code § 35–48–4–1 (2004) (subsequently amended by Pub.L. No. 151–2006, § 22 (eff. July 1, 2006)).

On February 2, 2004, Officer McPherson performed a trash pull at Jefferson's residence. Specifically, Officer McPherson pulled the trash from directly behind Jefferson's residence in an area "consistent with a trash collection agency picking it up" on a collection day when trash cans placed out by other residents in the neighborhood "were lined up all down the alley" for trash collection. Transcript at 44. Officer McPherson searched the trash and found "a whole bunch of baggies with the corners tore out of them" and marijuana, specifically "a couple of roaches, which is the end of a marijuana cigarette that had been smoked." Appellant's Appendix at 115.

Based upon this information, Officer McPherson filled out a probable cause affidavit. On February 3, 2004, Officer McPherson sought and received a search warrant for Jefferson's residence. That same day, the police executed the search warrant and recovered marijuana, sixty-six grams of crack cocaine, a "weight scale box," sandwich bags, and handguns. Transcript at 421. During a patdown search of Jefferson, the police recovered multiple baggies of cocaine.

On February 6, 2004, the State charged Jefferson with dealing in cocaine as a class A felony and possession of cocaine as a class C felony. On February 18, 2004, the search warrant and probable cause affidavit were filed with the trial court clerk. On April 15, 2005, Jefferson filed a motion to suppress evidence seized pursuant to the search warrant alleging that the affidavit was unreliable and failed to establish probable cause. After a hearing, the trial court denied the motion. On July 28, 2006, Jefferson filed another motion to suppress evidence seized pursuant to the search warrant. On September 26, 2006, Jefferson filed an addendum to his motion and argued that Officer McPherson did not

have an articulable, individualized suspicion to support a search of the trash and that the results of the trash search could not be used to provide probable cause for the search warrant. After a hearing, the trial court denied the motion.

At trial, Jefferson represented himself pro se and did not testify. During closing argument, Jefferson stated that he had been a drug user but had changed his life and admitted that the police had found drugs on him. The prosecutor objected on the basis that Jefferson was testifying, and the trial court sustained the objections.

After the jury trial, the jury found Jefferson guilty as charged. The trial court entered judgment of conviction only on the offense of dealing cocaine as a class A felony due to double jeopardy concerns. The trial court sentenced Jefferson to fifty years in the Department of Correction.

## I.

 The first issue is whether the trial court abused its discretion by admitting the evidence obtained during the search. Although Jefferson originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. "Thus, the issue is ... appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind.Ct.App.2005) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003)). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Id.* (citing *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *reh'g denied, trans. denied*). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v.*

*State*, 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Lundquist*, 834 N.E.2d at 1067 (citing *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct. App.2005), *trans. denied*). However, we must also consider the uncontested evidence favorable to the defendant. *Id.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind.Ct. App.1999), *reh'g denied, trans. denied.*

Jefferson argues that the trial court abused its discretion by admitting the evidence obtained during the search because: (A) the search was unreasonable under *Litchfield*, which, according to Jefferson, applies retroactively; and (B) the warrant and probable cause affidavit were filed with the trial court clerk fifteen days after the warrant was signed by the judge.

## A. *Litchfield*

■ At the time of Officer McPherson's search of the trash, Article I, Section 11 of the Indiana Constitution allowed police to conduct trash searches, so long as the manner of the search was reasonable. *See Moran v. State*, 644 N.E.2d 536, 541 (Ind. 1994), *reh'g denied*. However, on March 24, 2005, subsequent to Officer McPherson's trash search but before Jefferson's case became final, the Indiana Supreme Court decided *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005). In *Litchfield*, the Indiana Supreme Court changed Indiana's constitutional jurisprudence, holding in relevant part that "a requirement of articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile," imposes the appropriate constitutional standard in trash searches. *Id.* at 364.

Jefferson argues that the trial court abused its discretion by admitting the proceeds of the house search because the search warrant was based on the trash search. Specifically, Jefferson argues that *Litchfield* applies retroactively and the police "did not have an individualized, articulable suspicion as required by *Litchfield* when they searched Jefferson's trash." Appellant's Brief at 18.

■ The Indiana Supreme Court has recently decided when *Litchfield* applies retroactively. In *Membres v. State*, 889 N.E.2d 265, 274–75 (Ind.2008), the Court held that "challenges to pre-*Litchfield* searches that did not raise *Litchfield*-like claims in the trial court before *Litchfield* was decided are governed by pre-*Litchfield* doctrine even if the cases were 'not yet final' at the time *Litchfield* was decided." Here, Jefferson did not raise any "*Litchfield*-like claims" before *Litchfield* was decided on March 24, 2005. Thus, we conclude that Officer McPherson's trash search is governed by pre-*Litchfield* doctrine. *See id.* at 274–75; *Belvedere v. State*, 889 N.E.2d 286, 287–88 (Ind.2008) (relying on *Membres* to hold that "[b]ecause [the defendant]'s challenge to this pre-*Litchfield* search was first raised after *Litchfield* was decided, *Litchfield* is not available to him in this appeal").

Accordingly, "[t]his trash search is governed by the law as articulated in *Moran v. State*, 644 N.E.2d 536 (Ind.1994), which looked to the totality of the circumstances to evaluate the reasonableness of a search and seizure." *Belvedere*, 889 N.E.2d at 288. In *Moran*, the Indiana Supreme Court upheld a search and seizure of garbage left in front of the defendant's house, noting that the police conducted themselves as trash collectors, did not disturb Moran or his neighbors, and did not trespass. *Moran*, 644 N.E.2d at 541. Similarly, in *Lovell v. State*, 813 N.E.2d 393, 398

(Ind.Ct.App.2004), this court upheld a trash search under *Moran* where the trash bags were next to the mailbox, other people had trash out, and there was no indication of trespass or disturbance of the neighbors.

■ Here, Officer McPherson received information from a confidential informant and a DEA document from one of the detectives in his office advising that Jefferson was selling cocaine in Indianapolis.[2] Officer McPherson pulled the trash from directly behind Jefferson's residence in an area "consistent with a trash collection agency picking it up" on a collection day when trash cans placed out by other residents in the neighborhood "were lined up all down the alley" for trash collection. Transcript at 44. Jefferson does not argue and the record does not reveal that Officer McPherson failed to retrieve the trash in the same manner as a trash collector, bothered any neighbors, or trespassed. Based upon our review of the record, we conclude that the trash search was reasonable under the law at the time of the search and that Jefferson's constitutional rights were not violated when Officer

McPherson searched his garbage bags. Because Jefferson's rights were not violated by the trash search and the search of the house was based on information learned by the search of the trash, we conclude that the trial court did not abuse its discretion by admitting evidence obtained as a result of the house search. *See Belvedere*, 889 N.E.2d at 288; *Moran*, 644 N.E.2d at 541 (holding that the police activity was not unreasonable under Article 1, § 11 of the Indiana Constitution and concluding that the evidentiary basis for the search warrant was not tainted because it included evidence of the contents of the trash bags), *Lovell*, 813 N.E.2d at 398 (holding that the trial court did not abuse its discretion by admitting evidence obtained as a result of a police search of garbage bags).

### B. *Filing of the Probable Cause Affidavit*

■ Jefferson also argues that the trial court abused its discretion by admitting the evidence obtained during the search because the probable cause affidavit was filed with the trial court clerk fifteen days

2. The following exchange that occurred during the examination of Officer McPherson during one of the suppression hearings suggests that Officer McPherson had dealt with the informant in the past:

Q Did you do a further investigation after you received that document?
A Yes.
Q What did that investigation entail?
A I talked to the informant that gave the information to DEA and to Detective Howe (sic) and that information was corroborated with that individual. And then I started looking at Mr. Jefferson.
Q Had you ever dealt with that specific informant?
A Yes, sir.

Transcript at 28–29.

Regarding the DEA letter, Officer McPherson received a copy of an "OCEDEF" proposal from the Assistant U.S. Attorney's Office that Jefferson was a target of an investigation.

Officer McPherson explained an OCEDEF proposal as follows:

What an OCEDEF proposal is is when law enforcement agency, like a police department, is going to target a group of individual. And to target that group of individuals the police department doesn't have the means, mostly money sometimes equipment to target that group of individuals. It could include a wire tap, a Title III. Somebody approaches a federal agency or a U.S. Attorneys office and they do an investigation. And they bring together the information that they receive from reports, public reports, they use confidential informants. And to verify this information. That's kind of how a Title III starts. And then as you progress in the investigation, then the federal government provides money for equipment and over time, some manpower.

*Id.* at 40–41.

after the warrant was signed by the judge. Specifically, Jefferson argues that Ind. Code § 35–33–5–2(a) requires that a probable cause affidavit be filed with the trial court before a search is conducted. Appellant's Brief at 12.[3] Ind.Code § 35–33–5–2(a) provides:

(a) Except as provided in section 8 of this chapter, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

The Indiana Supreme Court has held that "[m]erely exhibiting an affidavit to the judge, or executing it before him, is not a 'filing' of the affidavit with the judge." *Thompson v. State,* 190 Ind. 363, 367, 130 N.E. 412, 413 (1921). Rather, "[f]iling consists of the delivery of the paper to the proper officer for the purpose of being kept on file by him in the proper place." *Id.*

 Indiana courts have previously held that delivery of the affidavit to the judge meets the requirements of Ind.Code § 35–33–5–2. *See Wilson v. State,* 263 Ind. 469, 479–480, 333 N.E.2d 755, 761 (1975) (holding that the filing requirement had been met because "the statute requires that an affidavit be filed 'with the judge' and the warrant itself recites that an affidavit was filed with the issuing judge"); *Moseby v. State,* 872 N.E.2d 189, 192 (Ind.Ct.App.2007) (holding that the requirement in Ind.Code § 35–33–5–2(a) that the affidavit be filed with the judge was met when the police left a copy of the affidavit with the judge's staff), *trans. denied.* Here, the search warrant, which was signed by Marion County Judge Young on February 3, 2004, stated, "WHEREAS, *an Affidavit has been filed with me,* a copy of which is attached hereto and incorporated herein all respects." State's Exhibit 1 (emphasis added). Jefferson has shown only that the probable cause affidavit was filed with the trial court clerk on February 18, 2004, and there is no evidence that the affidavit was not filed with the judge on February 3, 2004. We conclude that the facts satisfied the requirement in Ind.Code § 35–33–5–2(a) that the affidavit be "filed with the judge."[4] *See, e.g., Wilson,* 263 Ind. at

---

**3.** Jefferson also argues that Indiana Code § 35–33–5–2(a) "explicitly requires that a ... *warrant* be filed with the trial court before a search is conducted." Appellant's Brief at 12. We note that Ind.Code § 35–33–5–2(a) does not mention that a warrant must be filed with the judge, but provides that "no warrant for search or arrest shall be issued until there is filed with the judge an affidavit...." Jefferson focuses the remainder of his argument on the requirement in Ind.Code § 35–33–5–2 that an affidavit be filed with the judge and

does not develop his argument regarding the warrant. Thus, Jefferson has waived this argument. *See, e.g., Cooper v. State,* 854 N.E.2d 831, n. 1 (Ind.2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State,* 716 N.E.2d 391, 398 n. 3 (Ind.1999) (holding that defendant waived argument on appeal by failing to develop a cogent argument).

**4.** Jefferson relies on *State v. Rucker,* 861 N.E.2d 1240 (Ind.Ct.App.2007), *trans. denied,*

479–480, 333 N.E.2d at 761; *Moseby*, 872 N.E.2d at 192.

## II.

■ The next issue is whether the trial court failed to permit Jefferson to present a defense. Jefferson argues that "[d]uring his summation, [he] attempted to argue reasonable inferences from the evidence that were consistent with his theory of the case—that he was a user but not a dealer of cocaine." Appellant's Brief at 25. During Jefferson's closing argument, the prosecutor objected to Jefferson's comments on the basis that Jefferson was testifying. Jefferson argues that he "was not testifying" and "[h]is comments did not go beyond the evidence." *Id.* Jefferson argues that "[h]e had a right to urge the jury to infer, notwithstanding his allegedly exhibiting the behavior and appearance of a 'typical' cocaine dealer, that he was not a cocaine dealer." *Id.* at 26. The opportunity to make closing argument is required as a basic element of the adversary criminal process. *See Herring v. New York*, 422 U.S. 853, 864, 95 S.Ct. 2550, 2556, 45 L.Ed.2d 593 (1975) (holding that "the appellant, through counsel, had a right to be heard in summation of the evidence from the point of view most favorable to him").

Jefferson cites to the following portion of his closing argument:

[Jefferson]: .... You see ladies and gentlemens [sic] of the jury, I didn't choose to represent myself to appear to be bigger than what I am or to say that I'm qualified effectively to be represent-

ing—to represent myself as a lawyer as if I went to school as a scholar. But this I do know, who will be able to better express what needs to be told than me, myself. Cause hear what I say and may the Lord give you understanding in all things. Because he's able to do that. I'm charged with possession with intent to distribute cocaine. However you must prove beyond a reasonable doubt that this is what I'm charged with, and this is what I intended to do. Distribute cocaine. No one ever testified out of all them offices [sic] getting' on the stand no one ever testified that I sold drugs in my life to anyone. And if you can't testify to this than [sic] how can you testify to what my intentions were. Its [sic] up to you, the jury, to make that determination by the facts (indiscernible) in this case. There's been no testimonies ... that I ever sold drugs to anyone. Because I'm not a drug seller. But one time in my life I used to be a drug user. Today as you see me, I may no longer look like a drug user because I've changed my—I've changed my life by the grace of God. And all my past life, what I went through three and a half years ago is all in the past in my life. So I don't have—understand why they are trying to say that this was my intentions back there. When I—

[Prosecutor]: Your Honor. Object. He's testifying and not—

THE COURT: Sir, sir—

[Jefferson]: Yes.

___

to argue that the requirement of Ind.Code § 35–33–5–2(a) had not been met. We find *Rucker* distinguishable. In *Rucker*, the opinion did not indicate whether the search warrant contained language declaring that an affidavit had been filed. Rather, the State appeared to concede that the officers did not file the affidavit with the judge because it argued that "the failure of the officers to file

the affidavit with the judge did not affect any important function of the warrant requirement." *Rucker*, 861 N.E.2d at 1241. Here, the search warrant, which was signed by Marion County Judge Young, stated, "WHEREAS, *an Affidavit has been filed with me,* a copy of which is attached hereto and incorporated herein all respects." State's Exhibit 1 (emphasis added).

THE COURT: You have to confine your comments to what the evidence was. There's no evidence about your life or you changing your life or anything.

[Jefferson]: Okay.

THE COURT: The jury is instructed to disregard that. What he is saying here is the same as the lawyers, it's not evidence. You cannot consider it as evidence only as his argument. You have to confine your arguments to the evidence that was presented from the witness chair and through the exhibits, sir. Thank you.

[Jefferson]: Thank you. However, if possession to consume is a crime, I probable [sic] have been guilty of that at that time. When they did find drugs on my person—

[Prosecutor]: Your honor, he's still testifying. And the State would object on that basis.

[Jefferson]: They found drugs on my person. I stated that. That's in evidence.

THE COURT: Can you not talk until they're done. It's hard for me to hear two people talk at the same—what's your objection here?

[Prosecutor]: Your honor he was still testifying in the way that he used to be a user. And that's not in evidence.

THE COURT: Sustained again. The jury is ordered to disregard that. You can't say—you had your chance to testify, sir. You choose not to. That's your right. This is your chance to make an argument as a lawyer about the evidence the jury actually heard. Not about things that you just want to tell them about your life. You can't do that. All right. Thank you.

[Jefferson]: Excuse me. Excuse me, jurors. Well, just don't let the prosecution try to take the circumstances in evidence that you have seen and apply it to my life as if—because I allegedly—okay, I found—he found drugs on me. I admit you did find drugs on me. But that's—you did perhaps find drugs on my person. Excuse me, and that's what I perhaps am guilty of. I am guilty of possession of drugs in [sic] my person. Excuse me, I just get a little nervous, but I just want to express myself to the jury. Hope that you could find by a reasonable—beyond a reasonable doubt that if I be found guilty of anything find me guilty of what the facts of the case determines. Okay, Mr. Mc—Officer McPherson he got on the stand and he stated—he said we—asked if he ever took surveillance. He stated several other officers got on the stand. Five, not six and they took surveillance on my home, 741 Bosart which I stayed there. He stated that during his surveillance, four to five times what did you see? His answer, nothing. I never seen nothing. The other officers that got on the stand that took surveillance. What did you see? I seen nothing. Okay. Well, what I'm trying to say is, if they had surveillance going on to my house that is allegedly distributing drugs, with the intention to distribute drugs they have to be some type of suspicion. There have to be some type of traffic and there would have to be somebody there to notice something going on. That's what I am here to tell you. I'm not a big drug seller. I've used in my life. That's all I am, a drug user. I'm not a seller. All during this surveillance, the only thing he did, only testified to the fact of when he came into this house what did you observe? Okay, you got me. You got drugs off of me. I admit to that, that you gotten [sic] drugs off of me. That's not a problem. I willing to be— I'm willing to be punished for what I'm guilty of.

[Prosecutor]: Objection, Your Honor. The defendant is testifying—he's saying what he would admit or not admit to. He had a chance to testify earlier. He did not do that.

THE COURT: Sir, again I'm going to sustain the objection. You have to confine your comments to what the evidence—

[Jefferson]: Your Honor, I'm not trying to—

THE COURT:—and there's no evidence about your prior drug use in this case.

[Jefferson]: Okay.

THE COURT: They heard evidence about what happened that day. They are going to base their decision on that. You don't get to get up here and testify while not under oath.

[Jefferson]: Okay.

THE COURT: Again, I'll instruct the jury to please disregard any statements by him as to what he is nor is not. He chose not to testify. There's no evidence in this case of that. So confine your comments to what took place up here. And the reasonable inference thereon.

[Jefferson]: I apologize. I truly—I truly apologize.

THE COURT: I understand. You are trying to do the best you can. I appreciate that.

[Jefferson]: This is the first time I ever done this and I truly apologize. I'm trying to do my—I'm trying to do my best to confine myself to what the law expects of me and respect that. But I— There's no one able to express how I feel but me according to the facts and the evidence that was revealed on the stand. Out of all of the evidence, we have fingerprint analysis. We have crime lab technicians. And all that. All the evidence that was examined, the only thing I asked were they—were my fingerprints on anything of any of the evidence? What was the answer, no. Perhaps there were fingerprints take [sic] off of the drugs that was allegedly found on my possession (sic). I would have been guilty of that. Prosecution is trying to take circumstantial evidence and try to make it fit into the puzzle of my life and I will explain that to you how. Because I'm willing to accept my role in this—this so—whole scenario.

[Prosecutor]: Again, Your Honor, Defendant is testifying. There was no testimony about his role.

[Jefferson]: You said on the openings you said my role, Curtis' role—

THE COURT: That objection is overruled. You may proceed, sir.

Transcript at 604–611. Jefferson continued his closing argument over the next eleven pages of the transcript. In part, Jefferson argued:

How can you go into my body, how can you go into my mind and tell me my intentions were to distribute drugs. Okay, perhaps if I possessed all of hem [sic] drugs. I can't consume all of them drugs. I'd be dead I wouldn't be here to talk to you today.

\* \* \* \* \*

Perhaps, ore [sic] than likely he is going to try to distribute them. Who is to say that small little bag that I had on my person, who is to say that small little bag that I had on my person was not just for my personal use. It was on my personal body. Why was it not for my personal use.

\* \* \* \* \*

[I]f you want to find me guilty of anything, find me guilty of possession.

Id. at 617–621.

■■■ A defendant who chooses to exercise his right to proceed pro se must

accept the burden and hazards incidental to his position. *Tapia v. State,* 753 N.E.2d 581, 587 (Ind.2001). Moreover, a defendant who represents himself will be held to the rules of trial procedure, will be treated like an attorney, and will be responsible for making objections and following procedural and evidentiary rules. *Piper v. State,* 770 N.E.2d 880, 883 (Ind.Ct.App.2002). "It is improper for counsel in argument to comment on matters not in evidence, and it is the duty of the trial court to see that they refrain from doing so." *Trice v. State,* 519 N.E.2d 535, 538 (Ind.1988). To the extent that Jefferson attempted to state that he used to be a drug user, had changed his life, and admitted to possessing the drugs, we hold that Jefferson was commenting on matters not in evidence and the trial court correctly sustained the prosecutor's objections. *See id.* Despite the prosecutor's objections, Jefferson was still able to argue that he was a user and not a dealer. Given the fact that Jefferson was not allowed to comment on matters not in evidence and the remainder of Jefferson's closing argument, we conclude that the trial court did not fail to permit Jefferson to present a defense.

For the foregoing reasons, we affirm Jefferson's conviction for dealing cocaine as a class A felony.

Affirmed.

NAJAM, J., and DARDEN, J., concur.