**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID M. PAYNE**
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA GILLESPIE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  27A02-1304-CR-374 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Dana J. Kenworthy, Judge
Cause No. 27D02-1108-FB-225

**January 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Joshua Gillespie ("Gillespie") appeals, following a jury trial, his convictions for Class B felony burglary[1] and Class C felony robbery.[2]

We affirm.

## ISSUE

Whether the trial court abused its discretion by limiting the scope of Gillespie's closing argument.

## FACTS

In February 2011, Gillespie lived and worked as a maintenance man at an apartment complex in Marion, Indiana. James Nash ("Nash")—who is a disabled veteran, is confined to a wheelchair, and takes prescription morphine for pain—also lived at the same apartment complex. Because Nash was disabled, he kept many of his personal belongings—such as cash, credit card, computer password information, morphine, and "odds and ends" like utensils and pens and paper—in a rectangular cardboard box ("Nash's box") that he kept within reach. Nash usually hid Nash's box when he went to bed because he had previously been robbed. In February 2011, Nash stored Nash's box in a trash can by his sofa. During that time, Gillespie had been in Nash's apartment six to twelve times to do various tasks and repairs for Nash. While in the apartment, Gillespie saw Nash take his morphine, which Nash took three times per day.

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-42-5-1.

On February 27, 2011, around 3:00 a.m., Nash was in his apartment, finishing playing a computer video game and getting ready for bed, when Nash's dog began barking loudly at a window. Nash wheeled toward the window and saw Gillespie climbing through the window. Gillespie had fixed the blinds on this same window one week prior. Nash started wheeling himself toward the telephone to call 911, and Gillespie then pushed Nash out of his wheelchair and onto the floor, causing injury to Nash. Gillespie grabbed Nash's box and ran out of the apartment through the door.

Nash struggled for twenty to thirty minutes to get himself back into his wheelchair. He then called the police and his credit card company and bank. Marion Police Officer Warren Dailey ("Officer Dailey") arrived at Nash's apartment around 4:30 a.m. Officer Dailey found footprints in the snow outside leading up to Nash's window and similar footprints in the front of Nash's apartment that led away from the apartment. Officer Dailey followed the footprints, which eventually led the officer to Gillespie's apartment. Nash later identified Gillespie from a photo array as the person who entered his home and took Nash's box.

Around 4:00 a.m., Gillespie went to the apartment of Kenneth Chance, III, f/k/a Travis White ("Chance"), and his girlfriend, Ashley Enyeart ("Enyeart"). Gillespie, Chance, and another individual then walked to a Circle K store, where the store's surveillance video shows they were in the store around 4:20 a.m. The following morning, around 10:00 a.m., Gillespie went back to Chance and Enyeart's apartment. Gillespie showed Chance a box, which he said he got when he "hit a lick." (Tr. 77).

3

Based on this information, the State charged Gillespie with Class B felony burglary and Class C felony robbery. Gillespie filed a notice of alibi, alleging that he was with Chance, Chance's brother, and another individual at a convenience store at the time of the crime.

Prior to trial, both the State and Gillespie filed motions in limine. The State sought to limit Gillespie's closing argument to only facts entered during trial and to prohibit Gillespie from making any reference during voir dire, trial, and closing argument, to Nash "being a known drug dealer." (App. 40). The Stated contended that such a reference had no relevance to the case and that the probative value was outweighed by the prejudicial effect. In Gillespie's motion in limine, he sought to prohibit the State from presenting evidence that Gillespie had "committed other criminal offense[s] other than those which [could] be used under the rules of evidence for impeachment purposes." (App. 42).

On February 21, 2013, the trial court held a hearing on the limine motions. During the hearing, Gillespie argued that he should be allowed to refer to Nash as a known drug dealer because Nash had previously been charged with dealing drugs. Gillespie argued it was relevant because being a drug dealer was "a high risk occupation" and led to being exposed to the threat of someone breaking in and stealing his drugs. (Tr. 11). The trial court rejected Gillespie's argument and granted the State's motion to prohibit any reference to Nash as a drug dealer. The trial court then issued an order, specifically ruling that both the State and Gillespie were precluded from "mak[ing] any reference during closing argument to evidence not admitted during the trial" and that [d]uring

4

arguments, Counsel [could] make reasonable inferences from the admitted evidence." (App. 46). The trial court also ruled that the State was prohibited from making any reference to Gillespie's illegal drug use and to any prior offense other than allowed by the evidence rules.

The trial court held a two-day jury trial on February 26-27, 2013. During the trial, Gillespie made three offers to prove in an attempt to introduce evidence that Gillespie had previously stolen cocaine from Nash and that Nash was a drug dealer. Gillespie made the first offer to prove after Nash testified. Outside the presence of the jury, Gillespie's counsel asked Nash if he had previously had a "bad encounter" with Gillespie. (Tr. 61). Nash responded that once, when Gillespie was in Nash's apartment with him, Gillespie "snatched" guitar parts from Nash's table and ran out the door. (Tr. 61). Gillespie's counsel then asked Nash whether "[w]hat actually happened" was that Gillespie stole cocaine, not guitar parts, that Nash was selling him that day. (Tr. 61). Nash denied counsel's allegation. Nash also denied Gillespie's counsel's accusations that Nash had "a history" of selling cocaine and his prescription medications. (Tr. 63). Gillespie's counsel asked to present testimony that Gillespie stole cocaine from Nash when he attempted to sell it to Gillespie and that Nash, therefore, had a "motive to lie" about Gillespie stealing Nash's box. (Tr. 64). The trial court sustained the State's objection, noting that there was "no evidence that there was any cocaine deal." (Tr. 66). Gillespie's counsel then asked the trial court to hold Nash under the State's subpoena until Gillespie had a chance to present Gillespie's testimony that he had stolen cocaine

5

from Nash.[3] The State, who had to pay to transport Nash to the trial, responded that it was releasing Nash from the subpoena and reminded Gillespie's counsel that any testimony that Nash was a drug dealer was precluded by the motion in limine.

Gillespie made a second offer to prove outside the presence of the jury after Chance's direct testimony that he and Gillespie walked to the Circle K after 4:00 a.m. and after Enyeart's direct testimony that Gillespie showed up at their apartment with a box and claimed he had "hit a lick" to get the box. (Tr. 77). When questioned during this offer to prove, both Chance and Enyeart testified that Gillespie had cocaine and pills inside the box that he brought to their apartment. Following their testimony, Gillespie's counsel appeared to withdraw his offer to prove, stating that he did not think he wanted to present their testimony.

Gillespie's third offer to prove, again outside the presence of the jury, was after Gillespie testified. During the offer to prove, Gillespie testified that, two or three days before the alleged crime, he had stolen cocaine from Nash. Specifically, Gillespie testified that he showed Nash some money and told Nash that he needed some drugs. When Nash pulled out some cocaine, Gillespie grabbed the drugs without paying and fled out Nash's front door. Gillespie also testified that he "believe[d]" that Nash was dealing drugs at that time. (Tr. 183). Gillespie's counsel argued that he wanted to present this testimony because it showed bias on Nash's part and that the showing of bias was "always relevant." (Tr. 184). Gillespie's counsel contended that the testimony would show that Nash was angry with Gillespie for stealing his cocaine and would show Nash's

---

[3] Gillespie's counsel acknowledged to the trial court that Gillespie's plan to testify that he stole cocaine from Nash was "[n]ot the smartest thing in the world[.]" (Tr. 67).

6

"motive and bias for having lied" and identifying Gillespie for a "crime that either didn't occur at all or if it did occur, occurred with somebody else." (Tr. 185). The State objected to the testimony and argued that it would open the door to testimony from Nash that Gillespie offered to buy some of Nash's morphine pills. Gillespie's counsel responded that Gillespie had no problem with opening the door to such testimony. The trial court discussed its review of case law[4] and ruled:

> These cases discuss the defendant's right to confront and cross-examine witnesses as guaranteed by the 6th Amendment and the 14th Amendment, as well as the Rules of Evidence which include 403 and 404. Essentially, breaking the case law down, the cases find that when there is a single principal important State's witness that provides the bulk of the State's case that any evidence regarding motive to lie on the part of that person is highly relevant to the case in question and that the defendant should be allowed to cross-examine regarding that motive within reason, so from there I go to the balancing. In this case, there is an allegation that there was a theft from the alleged victim. The alleged victim says it was guitar parts. Defendant states it was cocaine. I will allow evidence to be presented on that one incident; however, I believe any label of Mr. Nash as a drug dealer or any other reference to any other deals of drugs alleged by the defendant would be improper in getting into the more prejudicial than probative realm so I am limiting the evidence that can come it [sic] to that one single incident where the defendant states he stole from Mr. Nash. Also if the State wishes to present the testimony regarding the defendant's knowledge of what was in the box and why he had that knowledge then the State's [sic] free to present that evidence if they wish. Any questions about the limitations?

(Tr. 189-90). Gillespie's counsel responded that he understood the ruling but "disagree[d]" with the limitation because he thought "that you only have to deal drugs one time to be a drug dealer." (Tr. 190). Gillespie's counsel stated that he would "abide, of course, by the Court's ruling but we preserve our objection." (Tr. 190).

---

[4] Specifically, the trial court stated that it had reviewed *Marshall v. State*, 893 N.E.2d 1170 (Ind. Ct. App. 2008); *Hendricks v. State*, 554 N.E.2d 1140 (Ind. Ct. App. 1990), *aff'd in part by* 562 N.E.2d 725 (Ind. 1990); and *Olden v. Kentucky*, 488 U.S. 227 (1988).

Thereafter, Gillespie testified that he had previously stolen cocaine from Nash and that was "the reason [Nash was] mad at [Gillespie]." (Tr. 194). Neither Gillespie nor the State recalled Nash as a witness. Before Gillespie's closing argument, his counsel did not voice any additional objection to the trial court's ruling limiting his counsel from referring to Nash as a drug dealer.

The jury found Gillespie guilty as charged. The trial court imposed a fifteen (15) year sentence with twelve (12) years executed and three (3) years suspended to probation for Gillespie's Class B felony burglary conviction and a seven (7) year sentence for Gillespie's Class C felony robbery conviction. The trial court ordered that the sentences be served concurrently and executed in the Department of Correction. Gillespie now appeals.

<u>DECISION</u>

Gillespie does not challenge the sufficiency of the evidence used to support his two convictions or the sentence imposed by the trial court. Instead, he argues that the trial court abused its discretion by limiting the scope of his closing argument. Specifically, he contends that the trial court erred by not allowing him to refer to Nash as a drug dealer during his closing argument. He argues that there was evidence of a drug deal and that "it is only fair [that he] be allowed to call the seller a drug dealer" during closing argument. (Gillespie's Br. 16).

"Control of final argument is assigned to the discretion of the trial judge." *Rouster v. State*, 600 N.E.2d 1342, 1347 (Ind. 1992), *reh'g denied*. Unless there is an abuse of this discretion that is clearly prejudicial to the rights of the accused, the trial court's

ruling will not be disturbed. *Id.* We will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Emerson v. State*, 952 N.E.2d 832, 840 (Ind. Ct. App. 2011) *trans. denied.* Additionally, "[i]t is improper for counsel in argument to comment on matters not in evidence, and it is the duty of the trial court to see that they refrain from doing so." *Trice v. State*, 519 N.E.2d 535, 538 (Ind. 1988) (citing *Adler v. State*, 175 N.E.2d 358, 359 (Ind. 1961)).

Here, the trial court allowed Gillespie to present evidence that he stole cocaine from Nash instead of buying it from him. The trial court allowed such evidence so that Gillespie could present "evidence regarding [Nash's] motive to lie" as well as his defense that Nash accused Gillespie of the crimes at issue because Nash was upset at him for stealing his cocaine. (Tr. 189). However, aside from Gillespie's testimony that he stole cocaine from Nash, there was no testimony that Nash was a drug dealer. Thus, the trial court ruled that it would be "more prejudicial than probative" to "label" Nash as a drug dealer and limited Gillespie to presenting evidence on "that one single incident where [Gillespie] states he stole from Mr. Nash." (Tr. 190). From our review of the record, it is apparent that the trial court tried to strike a balance between the proscription against impeaching the credibility of a witness by acts of misconduct not reduced to conviction and Gillespie's right to present his defense and impeach witnesses.

Gillespie—who was allowed to present his defense to the jury—fails to show that he was prejudiced by the trial court's ruling that he could not call Nash a drug dealer during closing arguments. Additionally, there was no specific evidence introduced

during trial indicating that Nash was a known drug dealer. Accordingly, we conclude that the trial court did not abuse its discretion by limiting Gillespie's closing argument. *See, e.g.*, *Rouster*, 600 N.E.2d at 1347 (holding that we will not disturb a trial court's ruling regarding final argument unless there is an abuse of this discretion that is clearly prejudicial to the rights of the defendant); *Walls v. State*, 993 N.E.2d 262, 269 (Ind. Ct. App. 2013) (affirming the trial court's limitation of the defendant's closing argument where the defendant failed to show that he was prejudiced by the alleged error), *trans. denied*; *see also Trice*, 519 N.E.2d at 538 (explaining that the trial court has a duty to restrict counsel during argument from improperly commenting on matters not in evidence).

Affirmed.

MATHIAS, J. and BRADFORD, J., concur.